Jack R. KEARNEY *v.* SHELTER INSURANCE COMPANY

CA 00–162 29 S.W.3d 747

Court of Appeals of Arkansas
Division IV
Opinion delivered October 25, 2000

*McCullough Law Firm*, by: *Ronald L. Davis, Jr.*, for appellant.

*Matthews, Sanders & Sayes*, by: *Doralee Idleman Chandler* and *Roy Gene Sanders*, for appellee.

ANDREE LAYTON ROAF, Judge. Jack Kearney appeals from an award of summary judgment to Shelter Insurance Company (Shelter) in a breach-of-contract action. The alleged contract involved Shelter's subrogation claim arising out of a personal injury settlement in which Kearney represented the injured parties. Kearney argues that the trial court erred in granting Shelter's motion for summary judgment because there is a material issue of fact as to (1) whether a contract existed; (2) whether there was consideration to support a contract between him and Shelter; and (3) whether Shelter had any subrogation interest in any settlement reached by Kearney because his clients were not made whole. He also asserts that the ruling was invalid because he did not have notice of the summary-judgment hearing. We agree that this case presented factual issues that should not have been decided on summary judgment, and reverse and remand.

On July 28, 1997, Shandale White was in an automobile accident with a vehicle driven by Jason Lee Vance. White was insured by Shelter. Jaylin Porchay, Jacqueline Porchay, Shantrell Brooks and Dominque Brooks were passengers in White's vehicle. Shelter paid medical expenses on behalf of all four parties in White's car, totaling $3173.55. All of the injured parties retained Kearney to seek compensation from Jason Lee Vance for their injuries. During the course of his representation, Shelter alleges that Kearney agreed to represent Shelter on its subrogation claim against the personal injury settlement. A letter from Kearney to Shelter, dated February 19, 1998, merely stated, "Per your inquiry, my office will protect Shelter's interest in regard to medical payments forwarded in the above matter." Shelter asserts that due to its reliance on Kearney, Shelter did not place Vance's liability carrier on notice of Shelter's payment of medical expenses and its subrogation rights.

Shelter filed a complaint in circuit court against Kearney for breach of contract and, alternatively, asserted damages under the theories of promissory estoppel and/or detrimental reliance. Shelter subsequently moved for summary judgment based on an affidavit from its employee attesting to the facts alleged in its complaint and attached Kearney's February 19 letter. Kearney responded to Shelter's motion for summary judgment on September 23, asserting that (1) Shelter's affidavit did not contain any of the prerequisites for a contract, such as mutual agreement; (2) he had no communication with Shelter's affiant and that she, therefore, could not attest to such a contract; and (3) Shelter had no subrogation interest in any settlement claim because his clients were not made whole. On September 24, 1999, the trial court granted summary judgment to Shelter. Kearney and his attorney were not present to make oral arguments on the summary-judgment motion. After the court granted summary judgment, Kearney filed a motion to stay, a motion for reconsideration, a motion to set aside the judgment, and a motion to strike in which he raised the additional issues of failure of consideration, disputing that any consideration was paid or promised to him by Shelter, and lack of notice. Kearney also requested a hearing, which was denied.

On appeal, Kearney argues that the trial court erred in granting Shelter's motion for summary judgment. He argues that there is a material issue of fact as to whether a contract existed, whether there was consideration to support a contract between him and Shelter, and whether Shelter had any subrogation interest in any settlement reached by Kearney because his clients were not made whole. He also asserts that the ruling was invalid because he did not have notice of the summary-judgment hearing.

Our review of a trial court's granting of summary judgment focuses on whether the evidence presented by the movant leaves a material question of fact unanswered. *Mashburn v. Meeker Sharkey Financial Group, Inc.*, 339 Ark. 411, 5 S.W.3d 469 (1999). The moving party bears the burden of sustaining the motion, and the proof submitted is viewed in a light most favorable to the party resisting the motion. *Id.* The court should approve the granting of the motion only when the state of the evidence as portrayed by the pleadings, affidavits, discovery responses, and admissions on file is such that the nonmoving party is not entitled to a day in court. *Flentje v. First Nat'l Bank Of Wynne*, 340 Ark. 563, 11 S.W.3d 531

(2000). Summary judgment is not proper where evidence, although in no material dispute as to actuality, reveals aspects from which inconsistent hypotheses may reasonably be drawn and reasonable may might differ. *Johnson v. Harrywell Inc.*, 47 Ark. App. 61, 885 S.W.2d 25 (1994). Moreover, it does not automatically follow that the moving party is entitled to summary judgment simply because no affidavits were filed in response to a motion. *Muddiman v. Wall*, 33 Ark. App. 175, 803 S.W.2d 945 (1991). The object of summary-judgment proceedings is not to try the issues, but to determine if there are any issues to be tried; if there is any doubt whatsoever, the motion should be denied. *Flentje, supra.*

■ ■ Kearney argues that the trial court erred in granting summary judgment because there was a material issue as to whether a contract existed between him and Shelter due to lack of consideration. This argument has merit. In order for a contract to exist, there must be: (a) competent parties; (b) subject matter; (c) legal consideration; (d) mutual agreement; and (e) mutual obligations. *Moss v. Allstate Ins. Co.*, 29 Ark. App. 33, 776 S.W.2d 831 (1989). Consideration is any benefit conferred or agreed to be conferred upon the promisor to which he is not lawfully entitled, or any prejudice suffered or agreed to be suffered by promisor, other than such as he is lawfully bound to suffer. *Bass v. Service Supply Co., Inc.*, 25 Ark. App. 273, 757 S.W.2d 189 (1988).

■ Kearney's letter of February 19, 1998, indicated only that he agreed to protect Shelter's subrogation interest in the claim. The letter from Kearney is silent as to what he would receive for representing Shelter. Shelter contends on appeal that the consideration provided for creating such a contract of representation is the cost of collection, which is established statutorily by the insurer's right of reimbursement. Ark. Code Ann. § 23-89-207 (Repl. 1992). Our supreme court has defined "cost of collection" as used in the statute to mean expenses such as court costs, costs of service of process, cost of witness fees, costs of depositions, cost of attorney fees, and other similar expenses. *Wenrick v. Crater*, 315 Ark. 361, 868 S.W.2d 60 (1993). *See also State Farm Mut. Automobile Ins. Co. v. Bing*, 305 Ark. 280, 808 S.W.2d 304 (1991); *Daves v. Hartford Accident & Indemnity*, 302 Ark. 242, 788 S.W.2d 733 (1990); *Northwestern Nat'l Ins. Co. v. American States Ins. Co.*, 266 Ark. 432, 585 S.W.2d 925 (1979); *Baker v. State Farm and Casualty Co.*, 34 Ark. App. 59, 805 S.W.2d 665 (1991); and *National Investors Fire & Casualty v. Edwards*,

5 Ark. App. 42, 633 S.W.2d 41 (1982). Hence, Shelter contends, the statute supplies the consideration.

■■■■■ Mutual promises constitute consideration, each for the other. *Freeman v. Freeman*, 20 Ark. App. 12, 722 S.W.2d 877 (1987). While mutual promises will sustain a contract, there is no valid agreement if there is no promise by one party as a consideration for the other's promise. *Eustice v. Meytrott*, 100 Ark. 510, 140 S.W. 590 (1911). Although Kearney's letter of February 19, 1998, indicated that "per your inquiry," he would protect Shelter's subrogation interest in the claim, there is no evidence before the trial court of what, if anything, Shelter promised Kearney in return or whether the parties ever reached an agreement in this regard. Moreover, Shelter never asserted to the trial court that it agreed to any such payment or that a mutual agreement had been reached as to the amount, but rather sued for reimbursement of the full $3,173.55 it paid and received judgment for that amount. Moreover, Kearney asserted, albeit without providing the amounts of the settlements, that his clients were not made whole, and the judgment was entered without any evidence of the amounts of the settlements reached by Kearney.

■■■ ■■■ There remain the alternative theories pled by Shelter of detrimental reliance and promissory estoppel. In *Freeman v. King*, 10 Ark. App. 220, 662 S.W.2d 479 (1984), this court stated the rule with regard to estoppel as follows:

> A party who by his acts, declarations or admissions, or by his failure to act or speak under circumstances where he should do so, either with design or willful disregard of others, induces or misleads another to conduct or dealings which he would not have entered upon, but for such misleading influence, will not be allowed, because of estoppel, afterward to assert his right to the detriment of the person so misled.

*Freeman v. King, supra* (quoting *Bethell v. Bethell*, 268 Ark. 409, 597 S.W.2d 576 (1980)).

In *Van Dyke v. Glover*, 326 Ark. 736, 934 S.W.2d 204 (1996), the supreme court stated:

> The blackletter law on promissory estoppel is found in the Restatement (Second) of Contracts:

> A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.

*Van Dyke v. Glover, supra* (quoting *Restatement (Second) of Contracts,* § 90 (1981)).

Whether there has been actual reliance and whether it was reasonable is a question for the trier of fact. *Id.* In this regard, the affidavit submitted by Shelter asserted in material part that it had paid medical expenses on behalf of Kearney's clients in the total amount of $3173.55, that it was entitled to reimbursement out of any settlement or judgment obtained by the injured parties in that amount, that it had entered into an agreement with Kearney whereby he agreed to protect Shelter's interest, and that Kearney had settled the tort claims and failed to pay Shelter its subrogation interest. It then referenced Kearney's attached letter.

 Based on this evidence, we reach the same result with respect to the alternate claims of detrimental reliance and promissory estoppel. Kearney's responses and motions for reconsideration and to set aside the judgment are also sufficient to raise material issues of fact concerning whether there was a promise by Kearney upon which Shelter reasonably relied and whether Shelter's remedy should be the amount of its subrogation expenditures.

Because we are reversing and remanding this case for further proceedings, we need not address the remaining issues raised by Kearney concerning lack of notice of the summary-judgment hearing and whether Shelter is entitled to reimbursement if his clients were not made whole by the settlement with the third party.

Reversed and remanded.

BIRD and KOONCE, JJ., agree.