COMMUNITY BANK of NORTH ARKANSAS *v.*
TRI-STATE PROPANE

CA 04-645                                      203 S.W.3d 124

Court of Appeals of Arkansas
Opinion delivered February 2, 2005

*Stockland & Trantham, P.A.,* by: *Thomas D. Stockland,* for appellant.

*Thomas E. Smith,* for appellee.

A NDREE LAYTON ROAF, Judge. Community Bank of North Arkansas appeals from the trial court's award of judgment to appellee Tri-State Propane based upon theories of detrimental reliance,[1] in an action Tri-State brought against Community Bank to collect the propane bill owed by a turkey farm. On appeal, Community Bank argues that the trial court erred (1) in failing to find a condition precedent to payment of the outstanding propane bill; (2) in finding that Community Bank backed out of a loan it was processing for the buyers of the farm; and (3) in its calculation of damages. We affirm.

---

[1] Our courts have also referred to this theory as equitable estoppel. *See Freeman v. King,* 10 Ark. App. 220, 662 S.W.2d 479 (1981).

At trial, the following evidence was presented. Ricky and Susan Mayes were owners of a turkey farm in Benton County. The turkeys were being supplied to an entity named Cargill. In order to operate their turkey farm, the Mayeses purchased propane gas from Tri-State Propane, beginning in January 2002. In March 2002, the Mayeses fell behind in payments on the propane bill. John Hollaway, Tri-State's owner and president, notified James Patton at Community Bank that the Mayeses were delinquent on their payments. According to Hollaway, Patton stated that the bank would "take care" of the propane bill. Holloway stated that, based on this conversation, Tri-State continued to service the Mayeses' farm in March and April 2002.

Hollaway also testified that he had contacted Patton in the past when the farm's previous owner, Jane Ward, fell behind on her payments. In this regard, a letter dated February 19, 2001, was introduced into evidence. In the letter, Patton stated that Community Bank was aware that Mrs. Ward had an outstanding bill of $14,000; that it was currently processing a loan for the Mayeses, the new owners of the farm; that Community Bank had a substantial investment in the operation of the farm and requested that Tri-State continue to provide propane to the farm to insure that there was no interruption in its operations; and that upon consummation of the new loan, Ward's outstanding balance would be paid in full. Thereafter, Hollaway received payment from Community Bank for Mrs. Ward's bill.

In June 2002, Tri-State was continuing to provide propane to the Mayeses' farm but had not received payment. Holloway again contacted Patton and complained that the Mayeses were not paying their propane bills. Patton explained that Community Bank was restructuring the Mayeses' debt, and Holloway requested a letter from Patton explaining the circumstances. In a letter dated August 9, 2002, Patton advised Holloway that Community Bank was processing a loan for the Mayeses; that he was aware that there was an outstanding bill of $10,000; that Cargill would be placing birds at the farm the next week and that it was imperative that the farm have fuel prior to the receipt of the birds; and that upon closing of the loan, the outstanding balance would be "brought current." Based on this letter, Hollaway continued to service the farm.

At trial, Patton admitted that he told Holloway that Tri-State would be paid out of the proceeds of the Mayeses' loan, but denied that he said anything that would obligate the bank to pay

Tri-State out of its own funds. The evidence reflected that Cargill would write the Mayeses a check for operating the farm, that the Mayeses would take the check to Community Bank, and that the bank would keep sixty percent of the check to pay on the Mayeses' debt and the Mayeses would receive forty percent. Patton admitted that Community Bank continued this arrangement even though it was aware that the Mayeses were not paying the propane bill out of their forty percent. Regarding the loan referenced in the August 9 letter, Patton said that, during the final stages of the loan process, a water line on the farm broke and several hundred birds died. Consequently, Cargill seized the surviving birds and closed down the Mayeses' farm operations.

At the conclusion of the trial, the trial judge found that Tri-State continued to service the Mayeses' farm after Community Bank assured it that it would be paid. The trial court also found that Community Bank had benefitted time after time from Tri-State's willingness to provide propane. The trial court also found that the letter indicated that Tri-State would be paid "when" the loan was processed, not "if," and that there was no contingency. As a result, the trial court held that, Tri-State detrimentally relied on the bank's representation that bank proceeds would be made available to pay the bills, and also that Tri-State elected not to pursue other remedies. The trial court found that Community Bank was liable and awarded Tri-State $12,000 in compensatory damages, attorney's fees, and costs. It is from this decision that Community Bank appeals.

■ The findings of fact of a circuit court sitting as trier of fact will not be reversed on appeal unless clearly against the preponderance of the evidence, and in making that determination, we give due regard to the superior position of the trial court to judge the credibility of the witnesses and the weight to be given their testimony. *Stacy v. Williams*, 38 Ark. App. 192, 834 S.W.2d 156 (1992).

■■ In *Freeman v. King*, 10 Ark. App. 220, 226, 662 S.W.2d 479, 481 (1984), this court stated the rule with regard to estoppel as follows:

> A party who by his acts, declarations or admissions, or by his failure to act or speak under circumstances where he should do so, either with design or willful disregard of others, induces or misleads another to conduct or dealings which he would not have entered

upon, but for such misleading influence, will not be allowed, because of estoppel, afterward to assert his right to the detriment of the person so misled.

In *Van Dyke v. Glover*, 326 Ark. 736, 744-45, 934 S.W.2d 204, 209 (1996), the supreme court stated:

> The blackletter law on promissory estoppel is found in the Restatement (Second) of Contracts:
>
> A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.

*Van Dyke v. Glover, supra* (quoting Restatement (Second) of Contracts, § 90 (1981)). Whether there has been actual reliance and whether it was reasonable is a question for the trier of fact. *Id.*; *Kearney v. Shelter Ins. Co.*, 71 Ark. App. 302, 29 S.W.3d 747 (2000).

▮▮ Community Bank first argues that the August 9, 2002 letter established a condition precedent to performance of the parties' agreement. Conditions precedent are contract principles. *See Stacy v. Williams*, 38 Ark. App. 192, 834 S.W.2d 156 (1992). In its complaint, Tri-State asserted that it was entitled to damages based only upon detrimental reliance. The trial court's order also held that Tri-State was entitled to damages based on detrimental reliance. Neither party contended that a contract existed. Community Bank did assert in its notice of appeal, however, that it intended to argue that the trial court erred in failing to find a condition precedent, an assertion that was not presented as an argument to the trial court. Detrimental reliance is an equitable principle, *see Geren v. Caldarera*, 99 Ark. 260, 138 S.W.335 (1911), which may be presented as an alternative to a breach of contract claim. *See Kearney, supra*. Promissory estoppel is a basis for recovery when formal contractual elements do not exist. *Superior Fed. Bank v. Mackey*, 84 Ark. App. 1, 27, 129 S.W.3d 324, 341 (2003). Therefore, those principles related to conditions precedent are not relevant to the review of this decision.

▮ Although Tri-State also argues that the trial court's reference from the bench to the lack of a contingency was not equivalent to a finding that there was no condition precedent, this

argument is likewise misplaced because any principles related to conditions precedent are not relevant here. Moreover, it appears that the trial court's finding that there was no contingency was made in consideration of whether Tri-State's reliance on Community Bank's promise to pay was reasonable.

Community Bank next argues that there was no evidence that it backed out of the loan, and the trial court's finding in this regard is thus erroneous. It further argues, "This finding is critical, because even if there is a condition precedent, if the bank's action prevented the loan from closing, the condition can be treated as waived." *Cantrell-Waind & Assocs., Inc. v. Guillaume Motorsports, Inc.,* 62 Ark. App. 66, 968 S.W.2d 72 (1998). The principles of good faith and fair dealing do prevent Community Bank from deliberately failing to close on the Mayeses' loan. *Cantrell-Waind & Assocs., supra.* A party has an implied obligation not to do anything that would prevent, hinder, or delay performance. *Id.* A condition precedent may be excused by prevention or hindrance. *Id.* Again, because this case was based upon the theory of detrimental reliance, these contract principles are irrelevant.

We also note that while the trial judge did make several observations from the bench, including the comment that Community Bank backed out of the loan after the water line broke at the Mayeses' farm, the written order does not contain this statement, or any other findings related to Community Bank's unwillingness to close on the loan. In fact, the order only discusses detrimental reliance. Pursuant to Administrative Order 2(b)(2), an oral order announced from the bench does not become effective until reduced to writing and filed. *Judkins v. Hoover,* 351 Ark. 552, 95 S.W.3d 768 (2003), *overruled on other grounds. West v. Williams,* 355 Ark. 148, 133 S.W.3d 388 (2003). This rule eliminates or reduces disputes between litigants over what a trial court's oral decision in open court entailed. *See Price v. Price,* 341 Ark. 311, 16 S.W.3d 248 (2000). If a trial court's ruling from the bench is not reduced to writing and filed of record, it is free to alter its decision upon further consideration of the matter. *See Morrell v. Morrell,* 48 Ark. App. 54, 889 S.W.2d 772 (1994). The written order controls, and the issue of waiver is in any event irrelevant to this appeal.

For its final point on appeal, Community Bank argues that, even if Tri-State detrimentally relied on its representation, the trial court should have only awarded damages suffered after the representation was made in writing. Community Bank does not chal-

lenge the trial court's finding regarding detrimental reliance, only the amount of damages awarded, and argues that the trial court should have limited damages to those occurring after the August 9 letter.

A promise that the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and that does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. *Kearney, supra.* The remedy for breach is to be limited, as justice requires. *Id.* Whether there has been actual reliance and whether it was reasonable is a question for the trier of fact. *Mackey, supra; Kearney, supra.*

We first note that the trial court's decision was not based solely upon the August 9 letter. The trial court's order states, "[T]he Plaintiff had several communications with Separate Defendant, Community Bank of North Arkansas, from March 2002 through August 2002, and the Court finds that the Plaintiff detrimentally relied on the communications with Separate Defendant for payment of the money owed." It is clear that the court considered the phone calls made in March 2002 wherein Patton told Hollaway that the bank would "take care" of the outstanding balance owed to Tri-State. As a result, Tri-State continued servicing the Mayeses' farm in March and April. In June, Hollaway again contacted Patton and expressed concern about the past due bills. He was assured that the Mayeses' debt was being reconstructed. Hollaway testified that at that time he was owed $10,000 for services to the Mayeses' farm. The August 9 letter acknowledges the $10,000 debt, requests that propane services continue, and assures payment of the outstanding bills. As the trier of fact, the trial court found that, based upon this series of communications, it was reasonable for Tri-State to rely on Community Bank's assurances. Significantly, the trial court found that, based on Patton's assurances, Tri-State had not pursued other remedies available to it in collecting the debt. We cannot say that the trial court's findings in this regard are clearly against the preponderance of the evidence.

Affirmed.

HART and BIRD, JJ., agree.