

# ARKANSAS COURT OF APPEALS

DIVISIONS I, III & IV
No. CV-13-813

| | |
|---|---|
| ANDERSON'S TAEKWONDO CENTER CAMP POSITIVE, INC., and RICHARD ANDERSON<br><br>APPELLANTS<br><br>V.<br><br>LANDERS AUTO GROUP NO. 1, INC., d/b/a LANDERS TOYOTA; STEVE LANDERS, SR.; STEVE LANDERS, JR.; and SCOTT LANDERS<br><br>APPELLEES | **Opinion Delivered** June 18, 2014<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, SIXTH DIVISION<br>[NO. 60CV-11-3536]<br><br>HONORABLE TIMOTHY DAVIS FOX, JUDGE<br><br>AFFIRMED IN PART, REVERSED AND REMANDED IN PART ON DIRECT APPEAL; AFFIRMED ON CROSS-APPEAL |

## DAVID M. GLOVER, Judge

Landers Auto Group No. 1, Inc. d/b/a Landers Toyota (collectively with third-party defendants referred to as "Landers") brought an action against Richard Anderson and Anderson's Taekwondo Center Camp Positive, Inc. (jointly referred to as "ATC"), on July 9, 2011, alleging unlawful detainer and seeking a writ of possession, damages, costs, and attorney's fees. ATC answered the complaint, alleging its lawful presence on the property pursuant to an oral "partnership" agreement with Landers that allowed them to conduct their charitable operations[1] on the property, free of charge, and in reliance upon which ATC had made improvements to the property worth $100,000. ATC filed a counterclaim and third-

---

[1]It is not disputed that ATC was some type of charitable organization.

party complaint,[2] alleging specific performance, detrimental reliance, promissory estoppel, fraud, abuse of process, and breach of contract. Landers answered the counterclaim/third-party complaint. On April 19, 2013, Landers filed a motion for summary judgment, attaching excerpts from Richard Anderson's deposition. ATC did not timely respond to the motion nor appear at the hearing on May 22, 2013. At the conclusion of the hearing on the summary-judgment motion, the trial court orally granted it. On May 30, 2013, the trial court formally entered a summary judgment on Landers' complaint and dismissed with prejudice ATC's counterclaim and third-party complaint with prejudice. Landers sought an award of attorney's fees, but their motion was denied.

ATC raises two major points of appeal: 1) that an action in unlawful detainer was improper because ATC was not claiming a possessory interest in the property but rather was lawfully present pursuant to a license; and 2) that the trial court erred in granting summary judgment because Landers failed to present prima facie entitlement to summary judgment, the evidence was not viewed in a light most favorable to ATC, and material issues of fact remained in dispute. Landers cross-appeals the denial of attorney's fees, contending that the trial court erred in denying their request without explanation and seeking remand for reconsideration of the motion. We affirm the trial court in all respects except one—we reverse and remand the trial court's dismissal of ATC's claims for promissory estoppel and detrimental reliance.

---

[2]The named third-party defendants were Steve Landers, Sr.; Steve Landers, Jr.; and Scott Landers.



*Background*

This case was orally argued. The following facts are essentially undisputed by the parties. There was an initial verbal agreement of some sort between Steve Landers, Jr., and Richard Anderson, allowing Anderson to use, free of charge, an empty "bay" at the site of Landers Toyota on South University Avenue in Little Rock. The bay was to house Anderson's taekwondo group, which attempts to reach endangered young men through the teaching of taekwondo. Landers and ATC recognized from the outset that the bay would have to undergo some improvements in order to be fit for use by ATC. ATC improved the bay to some extent, claiming that the improvements were worth approximately $100,000. Landers was aware, to some degree, of the types of improvements being made, yet did not stop ATC and expressed no concern about the improvements.

Trouble arose concerning the utility charges associated with ATC's use of the bay, and approximately eight months after ATC's use of the bay began, Landers asked ATC to sign a lease and to begin paying rent and utilities. ATC refused, claiming a lack of funds to make such payments in light of the extensive expenditures that had been made in improving the bay. Throughout this matter, Landers has been very candid that an agreement of some sort was made between the parties, although Landers disagrees about the particulars, and ATC has expressed gratitude for Landers' initial generosity; however, a resolution of the issues that arose was not achieved.

*Standard of Review*

Summary judgment should be granted only when it is clear that there are no genuine



issues of material fact to be litigated and the moving party is entitled to judgment as a matter of law. *Office Machs., Inc. v. Mitchell*, 95 Ark. App. 128, 234 S.W.3d 906 (2006). The purpose of summary judgment is not to try the issues, but to determine whether there are any issues left to be tried. *Id.* Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Id.* On appellate review, we determine if summary judgment was appropriate based on whether evidentiary items presented by the moving party in support of its motion leave a question of material fact unanswered. *Id.* In so doing, we view the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.* When the facts are not at issue, but possible inferences therefrom are, we will consider whether those inferences can be reasonably drawn from the undisputed facts and whether reasonable minds might reach different conclusions from those undisputed facts, in which case summary judgment is not appropriate. *Id.*

*Discussion*

ATC divides its argument on appeal into two points, with several subpoints. The gist of ATC's entire argument, however, is that Landers, as the moving party, did not present a prima facie entitlement to judgment on the claims in either Landers' unlawful-detainer action or ATC's counterclaims and third-party complaint; that the trial court did not view the evidence in the light most favorable to ATC, as the nonmoving party; and that material issues of fact remained. The summary-judgment order is very short, containing no details.

Although we reverse and remand the dismissal of ATC's claim for promissory estoppel and detrimental reliance, we have concluded that the summary judgment can be affirmed in all other respects. For ease of discussion, we address ATC's points of appeal by discussing them first in the context of the trial court's grant of unlawful detainer and then its dismissal of ATC's counterclaims/third-party complaint.

*a. Grant of Unlawful Detainer*

ATC contends that the trial court erred in granting summary judgment in favor of Landers in the unlawful-detainer action because ATC was lawfully present on the property pursuant to a license; Landers did not establish a prima facie entitlement to summary judgment on this issue; the trial court did not view the evidence in the light most favorable to ATC, as the nonmoving party; and material issues of fact remained. We hold that the trial court's grant of summary judgment on this issue was appropriate.

Arkansas Code Annotated section 18-60-304 (Repl. 2003) provides in pertinent part:

> A person shall be guilty of an unlawful detainer within the meaning of this subchapter if the person shall, willfully and without right:
>
> . . .
>
> (2) Peaceably and lawfully obtain possession of any [lands, tenements, or possessions] and hold it willfully and unlawfully after demand made in writing for the delivery or surrender of possession thereof by the person having the right to possession, his or her agent or attorney[.]

It is undisputed that ATC was initially on the property with permission, pursuant to an oral agreement of some nature. However, in deciding Landers' motion for summary judgment on their claim for unlawful detainer, the trial court was presented with sufficient evidence to

establish the at-will status of ATC's occupancy of the property, Landers' written demand for ATC's surrender of possession, and Landers' right of possession. ATC did not timely respond and counter Landers' motion. Accordingly, ATC did not demonstrate to the trial court that ATC was anything other than an at-will occupant of the property, that Landers was not entitled to possession of the property, or that ATC possessed a right recognized in the law to remain on the property after the dispute with Landers arose. Moreover, the license theory urged by ATC in this appeal was not presented to the trial court until after the hearing on the motion for summary judgment, and it was rejected by the trial court, which found that between the parties, only Landers had a possessory right to the property. We agree. Viewing the evidence in the light most favorable to ATC, once the dispute arose between the parties, Landers' pursuit of an unlawful-detainer action was appropriate under these circumstances, it was supported by the undisputed facts, and Landers was entitled to summary judgment on that issue as a matter of law. We therefore affirm the trial court's grant of summary judgment on this issue of Landers' right to possession of the property.

### b. *Dismissal of ATC's Claims*

With respect to the trial court's summary dismissal of the claims raised by ATC, ATC contends that the trial court erred in doing so because Landers failed to present prima facie entitlement to summary judgment, the evidence was not viewed in the light most favorable to ATC, and material issues of fact remained in dispute. We affirm the trial court's dismissal of ATC's claims for abuse of process, fraud, breach of contract, and specific performance, but reverse its dismissal of the claims for promissory estoppel and detrimental reliance.

6

SLIP OPINION

*Abuse of Process.* To establish an abuse-of-process claim, a party must prove the following elements: 1) a legal procedure set in motion in proper form, even with probable cause and ultimate success; 2) the procedure is perverted to accomplish an ulterior purpose for which it was not designed; 3) a willful act is perpetrated in the use of process which is not proper in the regular conduct of the proceeding. *National Bank v. River Crossing Partners, LLC*, 2011 Ark. 475, 385 S.W.3d 754. The test of abuse for process is whether a judicial process is used to extort or coerce. *Id.* It is a narrow tort. *Id.* Our supreme court has taken the position that in order to sustain an abuse-of-process claim, there must have been issuance of process subsequent to initiation of suit, and the additional process must have been utilized for a coercive or improper purpose. *Union Nat'l Bank v. Kutait*, 312 Ark. 14, 846 S.W.2d 652 (1993). In its claim alleging abuse of process, the only process ATC mentioned to support its claim was the initiation of the suit. Landers specifically cited and relied upon the *Kutait* case in its brief supporting its motion for summary judgment, and ATC did not respond. Thus, the trial court was confronted with the undisputed fact that the only process issued in this case was that which initiated the suit, and that no subsequent process had been issued. On that basis alone, we hold that the trial court correctly dismissed the abuse-of-process claim.

*Fraud.* To establish a claim of fraud, a party must prove five elements: 1) a false representation of a material fact, 2) knowledge that the representation is false or that there is insufficient evidence upon which to make the representation, 3) intent to induce action or inaction in reliance upon the representation, 4) justifiable reliance on the representation, and 5) damage suffered as a result of the reliance. *Ultracuts Ltd. v. Wal-Mart Stores, Inc.*, 343 Ark.

7

224, 33 S.W.3d 128 (2000). With respect to the element of false representation of a material fact, the misrepresentation must relate to a past event, or a present circumstance, but not a future event. *See P.A.M. Transp., Inc. v. Arkansas Blue Cross & Blue Shield*, 315 Ark. 234, 868 S.W.2d 33 (1993); *Rice v. Ragsdale*, 104 Ark. App. 364, 292 S.W.3d 856 (2009). In asserting its claim of fraud, ATC alleged that Landers fraudulently induced ATC by promising free use of the property, never intending to fulfill such a promise; however, ATC acknowledged in the claim that Landers "initially feigned compliance" for more than nine months by allowing ATC's continuous possession and use of the property without charge. In its brief supporting its motion for summary judgment, Landers argued that it did not make a misrepresentation of a material fact, which is an essential element of the claim; that it allowed ATC to occupy the premises free of charge for nine months; that ATC's occupancy was at will; that a change in terms because of changed circumstances did not constitute fraud; and that *Ragsdale, supra*, supported its position that a claim for fraud must be based on a past event or a present circumstance, not a future event. ATC did not respond. The trial court was confronted with an undisputed fact that ATC had occupied the premises free of charge for nine months, just as represented by Landers, and that the asserted claim for fraud was based on an alleged misrepresentation of a future event, not a past event or present circumstance. The absence of one element is a sufficient basis for the trial court to dismiss the claim of fraud.

*Breach of Contract.* In asserting a claim for breach of contract, ATC alleged that Landers had breached the agreement by preventing ATC's access to the property and by filing the lawsuit for unlawful detainer. Because we have already explained that the trial court did not

8

err in granting Landers' motion for summary judgment on its complaint for unlawful detainer, it is clear that the trial court did not err in dismissing the claim for breach of contract.

*Specific Performance.* Count I of ATC's counterclaim/third-party complaint was for specific performance, promissory estoppel, and detrimental reliance. Specific performance is an equitable remedy that compels the performance of an agreement or contract on the precise terms agreed upon. *Higginbotham v. Graham*, 2013 Ark. App. 397. At a minimum, granting specific performance of the alleged agreement would require Landers to allow ATC's continued occupancy of the property, which would be in direct conflict with the outcome of the unlawful-detainer action. We find no error in the trial court's dismissal of this claim.

*Promissory Estoppel and Detrimental Reliance.* That brings us then to ATC's alternate equitable claim for compensation under Count I based on theories of promissory estoppel and detrimental reliance for the expenditures it made in alleged reliance upon its agreement with Landers. We have concluded that the trial court erred in dismissing these claims because Landers did not present a prima facie entitlement to have them dismissed with prejudice.

A promise that the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and that does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise, and the remedy granted for breach may be limited as justice requires. *Community Bank v. Tri-State Propane*, 89 Ark. App. 272, 203 S.W.3d 124 (2005) (quoting *Van Dyke v. Glover*, 326 Ark. 736, 744—45, 934 S.W.2d 204, 209 (1996) and Restatement (Second) of Contracts, § 90 (1981)). Detrimental reliance is an equitable principle which may be presented as an alternative to a

9

breach–of–contract claim. *Community Bank v. Tri-State Propane, supra.* Promissory estoppel

is a basis for recovery when formal contractual elements do not exist. *Id.* Whether there has

been actual reliance and whether it was reasonable is a question for the trier of fact. *Id.*

Here, it is undisputed that the parties had an oral agreement of some sort,[3] although

they differ in the details, and it is also undisputed that ATC made some level of expenditures

in preparing the space for use by its taekwondo students. Landers attached as an exhibit to

its motion for summary judgment a partial transcript of Richard Anderson's deposition in

which he explained his version of the agreement and the expenditures made on the facility.

Landers' motion for summary judgment concerning Count I of ATC's counterclaim/third–

party complaint provided that "the oral partnership cannot be specifically enforced. The

doctrine of promissory estoppel is not applicable." That contention is not helpful in

determining whether summary judgment was appropriate on Count I because the second

---

[3]In his deposition, Anderson quoted Steve Landers, Jr., as saying to him in their initial meeting: the place wouldn't cost ATC anything, and it would be ATC's responsibility to fix the place up. He alleged that Landers did not put any qualification on ATC's use of the property and that Landers declined to put their agreement in writing. According to Anderson, they then shook hands on the deal. Anderson finished his deposition referring to this business arrangement as a "partnership," a "partnership agreement," a "verbal partnership agreement," and referring to himself and Steve Landers, Jr., as "partners." The important fact for purposes of deciding summary judgment in this case is that there was an agreement of some sort, not what that agreement was called. In oral arguments on this case, ATC asserted that it was seeking alternative equitable relief in Count I of its counterclaim, and Landers candidly acknowledged that promissory estoppel/detrimental reliance can stand independently from specific performance and support monetary compensation. The dissent crystalizes the divergence of views among three panels of our court—do the references to promissory estoppel and detrimental reliance in the pleadings represent alternative theories of the case? The prevailing judges concluded that they do and that, for purposes of summary judgment, Landers did not establish its entitlement to have those claims dismissed with prejudice in a summary fashion.

sentence does not automatically flow from the first sentence. Similarly, Landers' supporting

brief contends in part:

> Anderson seeks to specifically enforce the verbal partnership. It also seeks damages based on breach of the partnership agreement. As discussed in the previous argument, a verbal partnership did not exist as a matter of law. Since a verbal partnership did not exist, the Court cannot specifically enforce it.

> Anderson asserts that he relied on an oral agreement, the oral partnership, to his detriment. The doctrine of promissory estoppel is available only when the formal elements of a contract do not exist. [Citation omitted.] The doctrine is not applicable. Anderson does not assert that elements of a partnership are missing, such as an offer, acceptance or consideration. Rather, Anderson asserts a valid oral partnership agreement exists. The doctrine of promissory estoppel is not applicable.

This explanation is also not helpful in demonstrating Landers' entitlement to have the claims

of promissory estoppel and detrimental reliance dismissed with prejudice. Pleading an

enforceable contract under the law—in addition to the equitable remedies of specific

performance, promissory estoppel, and detrimental reliance—does not render the equitable

remedies inapplicable. Yet, that is the argument made by Landers at the summary-judgment

hearing and now before us.

ATC's counterclaim can be fairly read to ask for specific performance, or, in the

alternative, to be compensated for the expenditures that were made in reliance upon promises

made. Landers, as the moving party, bore the burden of proving that ATC was not entitled

to a day in court on its claims of promissory estoppel/detrimental reliance. Landers was not

automatically entitled to have these claims dismissed simply because ATC neglected to

respond. *Kearney v. Shelter Ins. Co.*, 71 Ark. App. 302, 29 S.W.3d 747 (2000). Landers did

not or could not meet its own initial burden of proving that it was entitled to summary

11

judgment on these claims as a matter of law. The object of summary-judgment proceedings is not to try the issues, but to determine if there are any issues to be tried; if there is any doubt whatsoever, the motion should be denied. *Id*.

With the undisputed existence of an agreement or promise of some sort, and with the undisputed existence of expenditures of some level being made, allegedly in reliance thereon, we have concluded that Landers did not establish an entitlement to have the claims of promissory estoppel/detrimental reliance totally dismissed, with prejudice, in this summary fashion, and that the trial court erred in doing so. Whether ATC actually relied upon Landers' agreement or promises; whether such reliance, if found, was reasonable; what improvements were actually made; and what amount was actually and reasonably spent on the improvements are all questions for the trier of fact. We therefore reverse the dismissal of these claims and remand for proceedings consistent with this opinion.

*Denial of Attorney's Fees for Landers*

In its cross-appeal, Landers contends that the trial court abused its discretion in denying attorney's fees because it did so summarily, without explanation. We disagree.

As a general rule, attorney's fees are not awarded in Arkansas unless they are expressly provided for by statute or rule. *Security Pac. Housing Servs., Inc. v. Friddle*, 315 Ark. 178, 866 S.W.2d 375 (1993). Landers sought attorney's fees pursuant to Arkansas Code Annotated section 16-22-308, which allows for an award of fees in a contract action. This case originated as a suit for unlawful detainer, for which there is no authority for an award of attorney's fees. *Woods v. Kirby*, 238 Ark. 382, 382 S.W.2d 4 (1964). Moreover, only one of

SLIP OPINION

SLIP OPINION

ATC's several counterclaims was based on an alleged breach of contract. We generally recognize the trial court's superior position in determining whether to award attorney's fees. *Harrill & Sutter, PLLC v. Kosin*, 2011 Ark. 51, 378 S.W.3d 135. We find no abuse of discretion in the trial court's denial of attorney's fees under the circumstances of this case.

Affirmed in part, reversed and remanded in part on direct appeal; affirmed on cross-appeal.

WALMSLEY, WYNNE, VAUGHT, and BROWN, JJ., agree.

GLADWIN, C.J., and WHITEAKER, HIXSON, and WOOD, JJ., concur in part and dissent in part.

**ROBERT J. GLADWIN, Chief Judge, concurring in part and dissenting in part.** While I agree that the trial court should be affirmed on all the issues affirmed by the majority, I would also affirm the trial court's dismissal of ATC's cause of action under Count I for detrimental reliance and promissory estoppel. Thus, I dissent as to the reversal.

The majority adequately sets forth the facts and applicable law. The reason that the majority affirms the trial court on the other issues is also appropriate to rely on to affirm on Count I. Simply put, the entire Count is premised on ATC's detrimental reliance on a "Partnership Agreement" that did not exist.

While the majority discusses Landers's brief, it is more important to look at the counterclaim/third-party complaint filed by ATC. The entirety of Count I was pled based on the "Partnership Agreement." Paragraph 25 states that ATC relied on the promises of Landers, "as such exist in the Partnership Agreement." Paragraph 27 states that ATC's

13

reliance was reasonable in light of "other terms of the Partnership Agreement[.]" Paragraph 28 states that Landers should have expected ATC to rely on the terms of the "Partnership Agreement." Paragraph 29 states that, "based on the mutual promises and mutual benefits in the Partnership Agreement," ATC changed its position.

Nowhere in this pleading does ATC claim that it is pleading in the alternative for detrimental reliance or promissory estoppel. Paragraph 30 states that the "Partnership Agreement" is verbal, and claims, thus, that ATC's pleading of detrimental reliance and estoppel defeat any statute-of-frauds defense. Paragraph 31 then concludes that ATC is entitled, by reasons expressed in Paragraph 30, to specific performance of the "Partnership Agreement." I do not read this Count as an alternative pleading. ATC does not claim in Count I that there is an "oral agreement of some sort." It states unequivocally over forty times that these actions are based on a "Partnership Agreement."

Landers submitted proof in the form of the deposition testimony of Richard Anderson that a partnership agreement did not exist. This was attached to Landers's summary-judgment motion and considered by the trial court. ATC did not appear at the hearing, nor did it respond to the summary-judgment motion. Therefore, the trial court did not err in granting the summary-judgment motion, as the evidence and pleadings before it left no genuine issues of material fact to be litigated, and Landers was entitled to summary judgment as a matter of law. *Hoosier v. Interinsurance Exchange*, 2014 Ark. App. 120, ___ S.W.3d ___. Accordingly, I would affirm the trial court's order granting summary judgment in its entirety.

WHITEAKER, HIXSON, and WOOD, JJ., join.
*Ball & Stuart, PLLC*, by: *Jason A. Stuart*, for appellants.
*James, Carter & Coulter, PLC*, by: *Daniel R. Carter*, for appellees.