Cite as 2023 Ark. App. 131

# ARKANSAS COURT OF APPEALS
### DIVISION IV
No. CV-22-154

| | |
|---|---|
| BYRON SARTOR<br><br>APPELLANT<br><br>V.<br><br><br>MAYOR TONY COLE, INDIVIDUALLY<br>AND IN HIS CAPACITY AS MAYOR OF<br>THE CITY OF HUTTIG; AND THE<br>CITY OF HUTTIG<br><br>APPELLEES | OPINION DELIVERED MARCH 8, 2023<br><br>APPEAL FROM THE UNION<br>COUNTY CIRCUIT COURT<br>[NO. 70CV-11-403]<br><br><br>HONORABLE SPENCER G.<br>SINGLETON, JUDGE<br><br>AFFIRMED |

## ROBERT J. GLADWIN, Judge

Byron Sartor appeals from the December 20, 2021 order of the Union County Circuit Court that granted judgment in favor of appellees, Tony Cole, Jr.—individually and in his capacity as Mayor of the City of Huttig—and the City of Huttig. Sartor argues that the circuit court erred in (1) finding there was no valid employment contract; and (2) denying his abuse-of-process claim. We affirm.

### I. *Facts and Procedural History*

On March 18, 2010, Cole won the Democratic primary election for Mayor of Huttig, Arkansas, against incumbent Mayor Larry Hodge. There was no Republican candidate for the office; thus, Cole would take over the office on January 1, 2011, when Mayor Hodge's term expired.

In June 2010, Mayor Hodge negotiated a five-year employment contract with Sartor to become the chief of police for the City of Huttig. Section 6 of the employment contract provides:

> Termination for cause: The City may terminate the employee's employment at any time for cause with immediate—immediate effect upon delivering a written notice to the employee. For the purpose of this agreement, cause is defined as embezzlement, theft, larceny, material fraud, or other acts of dishonesty, of negligent or intentional disagreement of employee's duty under this agreement.

This matter went before the city council on June 14, 2010, and was approved and executed on that date.

After the execution of the negotiated and approved employment contract, Sartor purchased a second home in Huttig and moved there pursuant to the condition of his employment that he live within the city limits.

Cole's understanding of Arkansas law was that, as mayor, he had the right to choose his own department heads, and when he took office on January 1, 2011, he informed Sartor of his termination by way of a letter dated January 2, 2001, that states in part, "I have given careful and deliberate thoughts to its impact on staff, program, and services in the police department, actions of that result in the proposed establishment of your position. Due to mayor's incoming staff, it is with regret that your employment with the City of Huttig, Arkansas will end on January the 3rd, 2011."

On January 8, Sartor appealed the termination of his employment and the alleged breach of the employment contract to the city council pursuant to the provisions of Arkansas Code Annotated section 14-42-110 (Repl. 2013. The city council overrode Cole's decision

2

to terminate Sartor by the required two-thirds majority vote and reinstated Sartor to his position.

Cole subsequently began having concerns about Sartor's ability to perform his job, including that Sartor had disregarded having been told that his wife could not ride with him in his police vehicle. Although Sartor denied having been told that, on July 13, 2011, Sartor drove from Huttig to El Dorado for a scheduled court appearance in the police car with his wife, and he was aware that a Huttig city councilmember, Marcus Barr, had seen them riding together in the police vehicle. As a result, on July 14, 2011, Sartor wrote a letter to Cole explaining that he had taken his wife with him because he suffers from cluster migraines and that he cannot drive when he is experiencing one. The letter written to Cole states in part:

> Sometimes I have from 1 to 6 headaches a day that are so severe that you can't do anything but lay in the floor and vomit. Doctor's [sic] have advised me to not go off by myself while driving a vehicle due to the fast oncoming of these's [sic] headaches and the severity of the headaches. You cannot drive while having a Cluster Migraine [sic] headache.

Due to concerns that Sartor might harm himself or someone else while driving the police vehicle in such a state—potentially creating significant liability for the city—at the August 8 regular city-council meeting, Cole placed Sartor on administrative leave with pay and requested that Sartor obtain a doctor's note clearing him to work. The note from Sartor's personal physician, Dr. Nolan Hagood, that Sartor presented to Cole on or about August 15 indicated that Sartor had been having a flare of cluster migraines recently, that they are incapacitating when they occur, and that the doctor believed that "it is perfectly reasonable for him to have someone else in the car with him in case he suffered one of these headaches."

3

This response was unacceptable to Cole, and he followed up with Dr. Hagood by phone on or about August 10. On August 19, Sartor met with Cole who gave him the option to either resign or be terminated because of his medical disability—the cluster migraine headaches that would be a liability to the city. Sartor would not sign the resignation, so the same day, Cole terminated Sartor's employment for a second time.

On August 24, Sartor wrote a letter to the city council that concluded with the following sentence: "I respectfully ask for a meeting with Mayor Cole and the council to appeal this decision." However, nothing in that letter specifically asked for the termination appeal to be put on the following city-council-meeting agenda or at some later meeting with a date certain. And Sartor neither followed up with a phone call to Cole asking to be put on the agenda nor attended either the September or October city-council meetings following his second termination. He then arrived unannounced, accompanied by counsel, Marjorie Rogers, at the regular November 14 city-council meeting as it was concluding. Sartor did not seek to speak at the meeting, but Rogers did on behalf of Sartor's appeal of the second termination.

This time, Cole did not call for a vote by the city council on Sartor's appeal; in fact, he called for the adjournment of the meeting four or five times, because he did not want a vote on the issue because it was not on the agenda. Cole later testified that had the issue been on the agenda, he would have allowed the city council to vote on Sartor's appeal. Cole even specified that if Sartor would have come to the meeting following his second termination, he would have had to honor his August 24, 2011 letter, but by Sartor not

4

showing up until the November meeting and still not asking to be on the agenda, then it was not on that meeting's agenda. Sartor did not request to have the matter put on any agenda of any subsequent city-council meeting.

On December 12, 2011, Sartor filed a complaint against Cole and the City, alleging four causes of action: breach of contract, abuse of process, breach of the covenant of good faith and fair dealing, and violations of procedural due-process rights under the United States and Arkansas Constitutions. The matter was removed to United States District Court for the Western District of Arkansas on February 17, 2012, due to the allegation of violation of procedural due process. Cole and the City moved for summary judgment.

On July 20, the United States District Court ruled that Sartor did not have a property right in his employment as a result of the enactment of Ark. Code Ann. § 14-42-110, and, therefore, he had no right to due process in regard to his termination. Specifically, the district court ruled on both Sartor's federal and Arkansas claim for a due-process violation, stating that "[Sartor]'s due-process claim under Arkansas and federal law is *DISMISSED*." *Sartor v. Cole*, No. 1:12-CV-01011, 2012 WL 2974693 (W.D. Ark. July 20, 2012). That ruling was affirmed by the Eighth Circuit Court of Appeals. *Sartor v. Cole*, 501 F. App'x 604 (8th Cir. 2013). The remaining state claims were remanded back to the Union County Circuit Court.

On remand, on July 14, 2017, Cole and the City moved for summary judgment, and on August 4, Sartor filed a response. On August 22, Cole and the City filed a reply. On July 5, 2018, the circuit court entered an order noting that Sartor had conceded the claim of a violation of the covenant of good faith and fair dealing but that disputes of fact remained

on the issues of the claims of breach of contract and abuse of process; therefore, the motion for summary judgment was denied on those claims.

On April 3, 2020, Cole and the City filed a supplemental motion for summary judgment; on April 21, Sartor filed a response; and on May 5, Cole and the City filed a reply. On May 22, Sartor filed a competing motion for summary judgment, and on June 5, Cole and the City filed a response. On June 15, the circuit court entered an order denying Cole and the City's supplemental motion for summary judgment. On the same day, by separate order, the circuit court entered an order denying Sartor's motion for summary judgment.

On July 7, Cole and the City filed an interlocutory appeal but then dismissed it on September 11, 2020. On March 10, 2021, the circuit court ordered the matter to be set for a two-day jury trial.

On August 16, Cole and the City filed a motion for reconsideration of the denial of motion for summary judgment or in the alternative, for an express ruling on the issue of qualified immunity. On August 19, Sartor filed his response, and on August 27, Cole and the City filed a reply. A hearing was held on this matter on October 6, and Cole and the City's motion was denied. An order denying the motion for reconsideration of the denial of motion for summary judgment, or in the alternative, for an express ruling on the issue of qualified immunity was entered on October 7.

On November 1, Sartor filed an amended complaint. On November 19, Cole and the City filed a timely response, and on November 24, Cole and the City filed a motion to dismiss Sartor's amended complaint. Sartor filed a response on December 9.

6

On December 15, a bench trial was held on the two remaining claims. The circuit court ruled from the bench denying the breach-of-contract claim stating, under Arkansas Code Annotated section 14-42-110, "the Court finds that this is not a valid contract." The circuit court also found that "there was never a request made that he specifically be put on—Mr. Sartor made to be specifically put on a set agenda. So, I don't believe he actually had a process that was abused in this matter and accordingly, the abuse-of-process claim is also denied." On December 20, the circuit court entered its order reasserting its findings that the contract between the City and Sartor was not valid because it conflicted with the provisions of Arkansas Code Annotated section 14-42-110 and also that the abuse-of-process claim was likewise invalid. These claims were denied and dismissed with prejudice. Sartor filed a timely notice of appeal on December 30, 2021.

II. *Standard of Review and Applicable Law*

Our standard of review following a bench trial is whether the circuit court's findings are clearly erroneous or clearly against the preponderance of the evidence. *Roberts v. Crabtree RV Ctr., Inc.*, 2022 Ark. App. 519, at 4. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* Disputed facts and determinations of the credibility of witnesses are within the province of the fact-finder. *Id.*

The standard of review for statutory construction is well settled in Arkansas; the court is to review issues of statutory construction de novo. In *City of Siloam Springs v. La-De, LLC*, 2015 Ark. App. 130, at 3, 456 S.W.3d 787, 789, the court stated:

7

We are not bound by the trial court's decision; however, in the absence of a showing that the trial court erred, its interpretation will be accepted as correct on appeal. When reviewing issues of statutory interpretation, we keep in mind that the first rule in considering the meaning and effect of a statute is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. When the language of a statute is plain and unambiguous, there is no need to resort to rules of statutory construction. A statute is ambiguous only where it is open to two or more constructions, or where it is of such obscure or doubtful meaning that reasonable minds might disagree or be uncertain as to its meaning. When a statute is clear, however, it is given its plain meaning, and this court will not search for legislative intent; rather, that intent must be gathered from the plain meaning of the language used.

The basic rule of statutory construction is to give effect to the intent of the legislature. *Rahman v. BF Acquisitions, LLC*, 2022 Ark. App. 465, at 7, 655 S.W.3d 732, 736. We construe the statute just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Id.* Where the language of a statute is plain and unambiguous, we determine legislative intent from the meaning of the language used. *Id.* A statute is ambiguous only when it is open to two or more constructions or when it is of such obscure or doubtful meaning that reasonable minds might disagree or be uncertain as to its meaning. *Harkuf v. Marony*, 2022 Ark. 55, at 4, 639 S.W.3d 872, 874. However, when a statute is clear, it is given its plain meaning, and this court will not search for legislative intent. Rather, that intent must be gathered from the plain meaning of the language used. This court is very hesitant to interpret a legislative act in a manner contrary to its express language unless it is clear that a drafting error or omission has circumvented legislative intent. *Id.* The statute is construed so that no word is left void, superfluous, or insignificant, and meaning and effect

is given to every word in the statute, if possible. *Rogers v. Ark. Dep't of Corr.*, 2022 Ark. 19, at 6, 638 S.W.3d 265, 269.

III. <em>Discussion</em>

A. Breach-of-Contract Claim

1. <em>Validity of employment contract</em>

In looking at Arkansas law regarding the formation of a contract, Sartor argues that it is clear that a valid contract was entered into between the City and him. He submits that there was never any contention that the contract itself, aside from the effect the application of section 14-42-110 has on it, was facially invalid. There have been no arguments challenging the sufficiency of the contract under Arkansas law regarding the formation of the contract. The arguments from Cole and the City and the findings of the circuit court are simply that section 14-42-110 made the contract invalid.

Sartor submits that the ratification of a contract must be by the principal or by an authorized agent. *See City of Greenbrier v. Cotton*, 293 Ark. 264, 737 S.W.2d 444 (1987). The employment contract at issue was signed by Mayor Hodge and was approved by the city council at a meeting, thereby ratifying the employment contract. He claims that the employment contract was again ratified by the city council during the appeal of his first termination by Cole when the city council overrode the termination because Sartor was not terminated for a reason enumerated in the employment contract.

Sartor argues that it is clear that a contract for employment existed between the City and him because it was signed by all parties, was ratified by the city council both at the time

9

of signing and again when Sartor was reinstated as chief of police, and was acted on when Sartor assumed his role as chief of police per the terms of the employment contract.

The basis for the circuit court's decision to deny and dismiss Sartor's claim for breach of contract was based specifically on Arkansas Code Annotated section 14-42-110. Pursuant to the terms of that statute, the circuit court determined that Sartor's employment contract with the City was invalid as a matter of law and, therefore, was void ab initio.

Section 14-42-110 gives mayors an unqualified right to appoint and remove department heads, including the chiefs of police. Any contract that limits the rights of the mayor under that statute is void. *See City of Lamar v. City of Clarksville*, 314 Ark. 413, 425, 863 S.W.2d 805, 812–13 (1993) (holding a contract by a city that is contrary to the general law of the state is void). Essentially, what Sartor obtained from Mayor Hodge and the former city council is a contract that implies section 14-42-110 would not apply to it.

Sartor cites Arkansas Code Annotated section 14-58-303 (Supp. 2021) in support of the general proposition that as part of a mayor's inherent power comes the power to form contracts. Sartor maintains that the lack of ability to form contracts would severely hamper any city's ability to conduct business in an orderly and normal manner. Section 14-58-303(a) specifically provides:

> (a) In a city of the first class, city of the second class, or incorporated town, the mayor or the mayor's duly authorized representative shall have exclusive power and responsibility to make purchases of all supplies, apparatus, equipment, materials, and other things requisite for public purposes in and for the city and to make all necessary contracts for work or labor to be done or material or other necessary things to be furnished for the benefit of the city, or in carrying out any work or undertaking of a public nature in the city.

Sartor submits that under this statute, Mayor Hodge had the legal ability and authority to enter into an employment contract with Sartor for the position of chief of police. *See City of Harrison v. Boone Cnty.*, 238 Ark. 113, at 114, 378 S.W.2d 665, 666 (1964); *cf.* Ark. Code Ann. § 14-58-303(a). There are no provisions, cases, or prohibitions that would prevent Sartor and the City from entering into this employment contract.

What Sartor ignores is that the black-letter law for statutory construction is to give effect to the specific statute control over the general. *See Ark. Dep't of Comm. v. Legal Aid of Ark.*, 2022 Ark. 130, at 9, 645 S.W.3d 9, 15. In the instant case, the relevant specific statute is section 14-42-110(a)(1), which specifically gives the mayor authority to hire and fire department heads, including the chief of police.

Sartor argues that this is not an "unfettered right" because it can be overridden by a two-thirds vote of the council. Although it is true that the city council can override the mayor's decision to hire or fire a department head by a two-thirds vote, no one else in municipal government can initiate the decision to hire or fire, and section 14-42-110 places no limitations on the mayor's decision. Moreover, because this statute specifically deals with a mayor's power with regard to a department head, it controls over the general statute regarding the ability of a mayor to enter into contracts. Here, if Sartor's employment contract is allowed to be enforced, the former mayor would be limiting the specific statutory power granted by the General Assembly to the incoming mayor, Cole. We hold that the circuit court did not err in denying Sartor's breach-of-contract claim because the evidence supports

11

its finding that the employment contract entered into by Sartor and Mayor Hodge violated the express terms of section 14-42-110 thus making it invalid, illegal, and void ab initio.

B. Detrimental Reliance on the Terms of the Employment Contract

Alternatively, Sartor urges he has a valid claim for detrimental reliance. Detrimental reliance is an equitable principle that may be presented as an alternative to a breach-of-contract claim. He cites *Community Bank v. Tri-State Propane*, 89 Ark. App. 272, 203 S.W.3d 124 (2005), for the proposition that promissory estoppel is a basis for recovery when formal contractual elements do not exist. *Id.* A promise that the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and that does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise, and the remedy granted for breach may be limited as justice requires. *Id.*

Sartor submits that even if this court determines that no valid employment contract existed, Sartor was required to live in the city, and in reliance on this requirement, he purchased a second house there. Sartor notes that he purchased the house and moved to Huttig only because the employment contract guaranteed him a fixed term of employment. Sartor submits that because he relied on the existence of the employment contract in purchasing a home and moving to Huttig, the City's refusal to enforce the employment contract clearly works an injustice on him.

Cole and the City correctly point out that Sartor's argument regarding detrimental reliance was never raised in the circuit court and, therefore, cannot be considered on appeal.

Neither the complaint nor the amended complaint[1] filed in this case raised a cause of action for detrimental reliance. And that issue was neither tried by consent of the parties nor ruled on by the circuit court. Therefore, that issue is raised for the first time on appeal and cannot be considered by this court. *See Woods v. Woods*, 2020 Ark. App. 469, at 15, 611 S.W.3d 676, 685-86.

## C. Abuse-of-Process Claim

In its ruling, the circuit court made a determination "that [Sartor] did not request to have the issue of the review of his termination placed upon the agenda of the November 14, 2011 meeting. Therefore, Cole's denial of the review of that issue on the basis that it was not on the agenda of the November 14, 2011 meeting was not an act that was improper."

Sartor maintains that the testimony at trial clearly indicates otherwise. He references Cole's acknowledgment that any employee has a right to go before the city council and that Cole controls what is placed on the agenda as well as whether the city council can vote on an issue. Further, he asserts that Cole specifically testified that the way to get an issue before the city council was to bring him a letter or just call him.

At trial, Sartor provided a letter he had written to the city council on August 24, 2011, shortly after his second termination, claiming that it specifically asked to be on the agenda, and he now claims that Cole admitted he did not put him on the agenda for the

---

[1]The amended complaint that was filed on November 1, 2021, was verbally struck by the circuit court during the bench trial and formally struck in the December 20, 2021 judgment and order.

next city-council meeting following Sartor's letter. He takes issue with the fact that when he attended the November city-council meeting accompanied by counsel, Cole wrongfully refused to allow a vote on Sartor's reinstatement based on the mere allegation that the issue was not on the agenda. Sartor maintains that it is clear that Cole had no intention of ever putting the issue of Sartor's termination on the city-council-meeting agenda, thus ensuring that Sartor could not have an opportunity to be reinstated.

First, it is undisputed that Sartor did not attend either the September or October city-council meetings that followed his second termination. Moreover, the letter to which he refers provides, "I respectfully ask for a meeting with Mayor Cole and the council to appeal this decision." However, nothing in that letter specifically asked for the termination appeal to be put on the following city-council-meeting agenda or the agenda of some later city-council meeting with a date certain. And Sartor never followed up with a phone call to Cole asking that the issue be put on the agenda. Because there is no evidence before us that Sartor's appeal of his second termination was ever put on the agenda for the November city-council meeting, we decline to hold that the circuit court erred when it found that there was no improper act by Cole in not allowing the vote to go forward.

To the extent that Sartor's argument is a resubmission of his due-process claim that was dismissed in federal court and a misinterpretation of the circuit court's ruling, we reiterate that this matter was removed to the United States District Court for the Western District of Arkansas, which ruled that Sartor did not have a property right in his employment as a result of the enactment of Arkansas Code Annotated section 14-42-110, and therefore,

14

he had no right to due process with regard to his termination. Specifically, the district court ruled on Sartor's claim of a due-process violation based on both federal and Arkansas law, stating that "Plaintiff's due-process claim under Arkansas and federal law is *DISMISSED*." *Sartor*, No. 1:12-CV-01011, 2012 WL 2974693. As previously stated, that ruling was affirmed by the United States Court of Appeals for the Eighth Circuit. *Sartor*, 501 F. App'x 604.

The circuit court's finding at trial that Sartor's appeal of his second termination was not on the agenda for the November 14, 2011 city-council meeting was not part of a finding concerning Sartor's due-process claim because that claim specifically was no longer before the circuit court. The circuit court's finding concerning the issue of Sartor's termination not on the agenda and Cole's refusal to allow a vote on his reinstatement because the issue was not on the agenda of that meeting was with regard to Sartor's abuse-of-process claim. In paragraph 6 of the December 20, 2021 order, the circuit court found,

> Additionally, even if the Huttig City Council meeting of November 14, 2011 could be considered a legal proceeding for the purpose of fulfilling the elements of the tort of abuse of process, the Court finds that the Plaintiff did not request to have the issue of the review of his termination placed upon the agenda of the November 14, 2011 meeting. Therefore, Mayor Cole's denial of the review of that issue on the basis that it was not on the agenda of the November 14, 2011 meeting was not an act that was improper in the course of the proceedings for the purpose of fulfilling that element of the tort of abuse of process.

The argument made by Sartor is nothing more than a reargument of his due-process claim that has already been denied and dismissed. As such, the law-of-the-case doctrine squarely applies to that claim. "The doctrine of law of the case prohibits a court from

15

reconsidering issues of law and fact that have already been decided on appeal." *Green v. George's Farms, Inc.*, 2011 Ark. 70, at 7, 378 S.W.3d 715, 720 (internal citations omitted).

Affirmed.

HARRISON, C.J., and KLAPPENBACH, J., agree.

*Wood Law Firm, P.A.*, by: *Russell A. Wood* and *Paul A. Prater*, for appellant.

*M. Keith Wren*, for appellees.