## EUSTICE v. MEYTROTT.

Opinion delivered October 30, 1911.

1. CONTRACTS—MUTUALITY.—A complaint which alleges that defendant agreed, for a certain sum, to buy certain mining stock from plaintiff, but does not allege that plaintiff agreed to sell same at such price, fails to state a cause of action. Page 514.)

2. DAMAGES—BREACH OF CONTRACT TO BUY CHATTELS.—For breach of a contract for the sale of certain stock, the vendor could not recover as damages any loss of his stock because of his failure to secure the money for which the stock was to be sold, but only the difference between the market value of the stock at the time it was agreed to be delivered to the vendee and the sale price thereof. (Page 514.)

Appeal from Pope Circuit Court; · *Hugh Basham,* Judge; affirmed.

*Brooks, Hays & Martin,* for appellant.

The complaint is sufficient. By his representations and promises appellee induced appellant to change his condition and to take upon himself and his property a heavy burden, and this is a sufficient consideration for the contract. After the trade is made and appellant has changed his condition and assumed the burden, it is then too late for the appellee to repudiate his offer or attempt to evade responsibility under his agreement. 107 Mass. 37; 1 Beach, Mod. Law of Contracts, pp. 9, 10; *Id.* § 178; *Id.* § 583; 6 Am. & Eng. Enc. of L. 678; *Id.* 722; 10 Ark. 585; 54 S. W. 969; 64 Ark. 627; 71 Ark. 302.

*J. T. Bullock* and *R. B. Wilson,* for appellee.

The demurrer was properly sustained. While the complaint alleges an offer, it was a verbal one, and there is no consideration alleged. 4 Am. & Eng. Enc. of L. 928, 929. It nowhere alleges an acceptance, nor even an assent by the plaintiff, nor that there was any agreement or understanding between him and the defendant that he, plaintiff, should purchase the stock of White, nor any agreement on his part that he would sell to defendant $15,000 of stock or any other amount. There is an entire want of mutuality in the alleged contract. 7 Am. & Eng. Enc. of L. 114; 69 S. W. (Mo.) 34; 6 Am. St. Rep. (Md.) 417; 5 Am. St. Rep. (Mich.) 414; *Id.* (Wis.) 103 and cases cited; 30 Ark. 186; 64 Ark. 627; *Id.* 398; 19 L. R. A. (Minn.) 205.

KIRBY, J. The plaintiff, W. R. Eustice, on August 11, 1909, filed suit against the defendant upon the following complaint:

"The plaintiff, W. R. Eustice, sues the defendant, Joseph Meytrott, and for cause of action alleges:

"That the Southern Anthracite Coal Company was and is a corporation organized under the laws of the State of Arkansas, and was, on the dates hereinafter mentioned, engaged in mining and selling coal. That on the 1st day of January, 1909, the said Southern Anthracite Coal Company was and is capitalized at two hundred thousand ($200,000) dollars, all of which was subscribed and paid up, and was owned by the following named

parties and amounts, towit:  W. R. Eustice, 3,920 shares of the par value of ninety-eight thousand ($98,000) dollars;  W. J. White, 20 shares of the par value of five hundred ($500) dollars; and W. M. Eustice, 80 shares of the par value of two thousand ($2,000) dollars, all of which was subscribed and paid up.  That on said date the plaintiff was the owner and controlled one-half of the capital stock of said corporation, towit:  one hundred thousand ($100,000) dollars, and that on said date the said John W. White, owner of 3,980 shares of the capital stock of said corporation, became and was willing to sell his stock in said corporation to the plaintiff for the sum of one hundred thousand ($100,000) dollars, to be paid for in time payments, but the plaintiff was without means with which to run and operate said mine, and he was therefore unable to purchase the stock of the said John W. White without some definite arrangements for money with which to pay running expenses thereof.  That the defendant, Joseph Meytrott, was and is an architect and civil engineer, highly educated, and that he was on said date engaged at said mine and working for said corporation, and that he was familiar with all the property, lands and coal thereunder, and every other detail of the business of said corporation.  That on or about the said date the defendant represented to the plaintiff that he had made figures and estimates of all the coal underlying all of said lands, and that it was worth the sum of two million, five hundred thousand ($2,500,000) dollars, and that he, the defendant was possessed of money and property, and was able to assist the plaintiff in financing the operation of the mine; that the defendant became aware of the willingness of the said John W. White to sell his said stock to the plaintiff, and that thereupon the defendant came to the plaintiff and proposed and offered to him that if he (the plaintiff) would purchase the stock of the said John W. White upon time payments he (the defendant) would, immediately upon said purchase, take six hundred (600) shares of the capital stock so purchased at the price of fifteen thousand ($15,000) dollars, and that he would at once pay to the plaintiff for said stock the sum of seven thousand five hundred ($7,500) in cash, which sum could and should be used to pay the running expenses for said mine, and that the remaining seven thousand five hundred ($7,500) dollars should be paid at

a later date. The plaintiff, relying upon the honesty and integrity of the defendant and upon his ability to pay said sum of seven thousand five hundred ($7,500) dollars in cash upon the date of the purchase of said mining stock from the said John W. White, and knowing and realizing that he could use the said seven thousand five hundred ($7,500) dollars to pay the running expenses of said mine for a sufficient length of time to enable him, with the output, to make the time payments, as would be provided and agreed in the contract of purchase from the said John W. White, and upon said representations so made by the defendant, the plaintiff thereupon purchased the capital stock of the said John W. White in said corporation, said trade being made upon the condition that the defendant would take of said stock the sum of fifteen thousand ($15,000) dollars worth thereof, paying cash the sum of seven thousand five hundred ($7,500) dollars and the remaining seven thousand five hundred ($7,500) dollars to be paid at a later date. That after the purchase of the capital stock by the plaintiff from the said John W. White, the defendant, in violation of his agreement and in violation of the plaintiff's rights, failed and refused to take said fifteen thousand ($15,000) dollars worth of said stock, and failed and refused to carry out his said agreement to pay therefor the sum of seven thousand five hundred ($7,500) dollars in cash, or any other sum, and failed to provide in any manner for the further payment of the remaining seven thousand five hundred ($7,500) dollars, although plaintiff offered to have issued to h'm the said stock, all to the plaintiff's damage in the sum of twenty-five thousand ($25,000) dollars. That, upon defendant's failure and refusal to take and pay for said capital stock, as he had agreed to do, the plaintiff was left without cash or ready means with which to pay the running expenses of said mine, and was unable to run the same without great sacrifice, which he was forced to make, and that by reason of the making thereof he was placed at such a great disadvantage, and was unable to meet the time payments, and thereby lost practically all his rights and interest in and to said mines. Wherefore, in consideration of the premises, plaintiff prays judgment against the defendant in the sum of twenty-five thousand ($25,000) dollars, together with all his costs in this suit laid out and expended, and for all other proper relief."

A general demurrer was interposed and sustained, and, the plaintiff declining to plead further, his complaint was dismissed, and from this judgment he appealed.

We are not able to see that this complaint alleges a sale of the stock by the plaintiff to the defendant or an offer to buy by the defendant, which was accepted by plaintiff. At most, it alleges a promise on the part of the defendant to purchase a certain amount of stock in the Southern Anthracite Coal Company, if the plaintiff should buy the stock of John W. White in said company, but no corresponding promise upon the part of the plaintiff to sell to the defendant said stock upon his purchase of same.

In other words, by the terms of the complaint, such a sale or agreement is not shown or alleged as would have bound the plaintiff to sell to the defendant said stock after procuring it from said White.

In *Altee* v. *Bartholomew*, 5 Am. State Rep. (Wis.) 103, the court said: "The rule is well established that, in order to hold the defendants to their contract, the plaintiff must also be bound by the same contract, and in all questions of law to recover damages for an alleged breach of the contract it is clear that the contract must bind both parties."

"Mutuality of contract means an obligation must rest on each party to do, or permit to be done, something in consideration of the act or promise of the other, that is, neither party is bound unless both are bound." 7 Am. & Eng. Ency. of Law, (2 ed.) 114.

In *Turner* v. *Baker*, 30 Ark. 194, this court said: "A mere offer, unassented to, constitutes no contract, for there must not only be a proposal, but an acceptance thereof."

The mutual promise of the parties will constitute a sufficient consideration for a valid agreement; but where there is no promise upon the part of one of them, as a consideration for the promise of the other, there is no valid contract.

For a breach of contract of the sale of stock, if the contract was properly alleged, the plaintiff could not recover as damages any loss of interest in the mine, or to his stock therein, because of his failure to secure the money for which the stock was to be sold the defendant to continue the operation of the mine as claimed in the complaint, but only for the difference between

the market value of the stock at the time it was agreed to be delivered to the defendant and the sale price thereof.

Since the complaint did not allege a cause of action, the court did not err in sustaining the demurrer to it, and the judgment is affirmed.