William BERRY, M.D., P.A. *v.* CHEROKEE VILLAGE
SEWER, INC.

CA 03-693                                                     155 S.W.3d 35

Court of Appeals of Arkansas
Division IV
Opinion delivered March 10, 2004

*Kennard K. Helton*, for appellant.

*Friday, Eldredge & Clark*, by: *Bruce B. Tidwell*, for appellee.

OLLY NEAL, Judge. This appeal involves a suit to collect unpaid sewer-maintenance fees and a counterclaim seeking to enjoin collection of those fees. The trial court granted appellee judgment for the unpaid fees and directed a verdict for appellee on the counterclaim. This appeal followed. We reverse and remand.

Appellee Cherokee Village Sewer, Inc. (CVSI), is a private corporation that provides sewer services in Cherokee Village. Appellant William L. Berry, M.D., P.A., is a professional corpo-

ration that owns twenty-four or twenty-five rental units served by CVSI. It is not disputed that some of appellant's units are vacant and have been since at least 1997. It is also not disputed that appellant did not voluntarily pay the sewer-maintenance fees and that appellee sued appellant for collection of the fees on three prior occasions.

CVSI filed suit seeking to collect $5,477 in unpaid sewer-maintenance fees. Appellant admitted that it had not paid the fees but disputed the amount of fees. Appellant also filed a counter-claim seeking to enjoin collection of the maintenance fees as "illegal exactions" because the units were vacant and no sewer services were being provided. CVSI answered, denying that appellant was entitled to any relief on its counterclaim because CVSI was not a governmental entity. CVSI also moved to dismiss the counterclaim for failure to state facts upon which relief could be granted.

Eben Daggett,[1] president and shareholder of CVSI, testified that CVSI is a private organization that provides sewer services to approximately 250 customers in Cherokee Village. He testified that appellant owns twenty-five units; that CVSI maintains separate records for each unit; and that appellant owes a total of $7,561. He explained that some of appellant's units had the water turned off and were charged a $10 monthly maintenance fee and a $10 late charge. The maintenance fee was charged to keep the system operational, including the pipes and lagoon. Daggett testified that other units were occupied and charged $18 per month, with most of the tenants paying on time or being charged a late fee. He stated that monthly statements were sent to appellant but that appellant did not voluntarily pay. He also stated that appellant was notified of the CVSI rate structure by a notice sent in June 1999. This rate structure included for the first time a $10 monthly "User Maintenance Fee" for those units that have the sewer and water service shut off.

Daggett admitted that he did not have any agreements with townhouse owners, such as appellant, other than the bill of assurances, to pay the sewer maintenance fee. He admitted that there was no written or verbal agreement specifically with appellant to pay these fees. He took the position that, if a tenant did not pay the fee, the property owner was responsible. He also stated that

---

[1] Daggett is also referred to in the transcript as Evan Daggett.

the only time appellant paid the fees was in response to being sued and having judgment entered against it.

Dr. William Berry, the sole shareholder of appellant, testified that he was aware of appellant's failure to make payments to appellee and that appellant's objection was paying for service that was not being provided. He did not object to paying for services being used and admitted that he received the notice of the fee structure in June 1999. He stated that there are twelve townhouses owned by appellant that have not had water since appellant purchased them in 1997. Berry assumed, but was not certain, that the twelve townhouses were connected to the CVSI system.

The trial court issued an order and judgment on February 25, 2003, finding that appellee was entitled to prevail on the collection of accounts claimed in the complaint, and awarded judgment in favor of appellee in the sum of $7,561, interest on the judgment at ten percent per annum from the date of judgment, and attorney's fees and expenses in the sum of $800. This appeal followed.

Appellant argues two points on appeal: that the trial court erred as a matter of law in granting judgment to appellee on a theory of implied contract and in granting a directed verdict on its counterclaim. We agree with the first point and do not reach the second point.

The standard of review of a circuit court's findings of fact after a bench trial is whether those findings are clearly erroneous. Ark. R. Civ. P. 52; *Burke v. Elmore*, 341 Ark. 129, 14 S.W.3d 872 (2000). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. *McQuillan v. Mercedes-Benz Credit Corp.*, 331 Ark. 242, 961 S.W.2d 729 (1998). Disputed facts and determination of the credibility of witnesses are within the province of the judge, sitting as the trier of fact. *Ford Motor Credit Co. v. Ellison*, 334 Ark. 357, 974 S.W.2d 464 (1998).

In appellant's first point, it argues that the trial court erred as a matter of law in granting judgment to appellee on a theory of implied contract.

There are two classes of implied contracts, i.e., those properly called implied contracts, where the contract is inferred from the acts

of the parties and those which are more properly called quasi-contracts or constructive contracts, where the law implies an obligation. The first type of implied contract is sometimes called a contract implied in fact and it derives from the "presumed" intention of the parties as indicated by their conduct. In determining whether a "tacit" but actual contract exists, the prior course of dealing between the parties is to be considered. An implied contract is proven by circumstances showing the parties intended to contract or by circumstances showing the general course of dealing between the parties. A contract implied in fact does not describe a legal relationship different from that created by an express contract.

*Steed v. Busby*, 268 Ark. 1, 7, 593 S.W.2d 34, 38 (1980) (citations omitted).

 ■ In order to recover, it was CVSI's burden to prove either an express contract or an implied contract. *Johnson v. Mitchell*, 164 Ark. 1, 260 S.W. 710 (1924). In order for a contract, express or implied, to exist, there must be: (a) competent parties; (b) subject matter; (c) legal consideration; (d) mutual agreement; (e) mutual obligations. *Kearney v. Shelter Ins. Co.*, 71 Ark. App. 302, 29 S.W.3d 747 (2000); *Moss v. Allstate Ins. Co.*, 29 Ark. App. 33, 776 S.W.2d 831 (1989). Consideration is any benefit conferred or agreed to be conferred upon the promisor to which he is not lawfully entitled, or any prejudice suffered or agreed to be suffered by promisor, other than such as he is lawfully bound to suffer. *Bass v. Service Supply Co., Inc.*, 25 Ark. App. 273, 757 S.W.2d 189 (1988). Mutual promises constitute consideration, each for the other. *Freeman v. Freeman*, 20 Ark. App. 12, 722 S.W.2d 877 (1987). While mutual promises will sustain a contract, there is no valid agreement if there is no promise by one party as a consideration for the other's promise. *Eustice v. Meytrott*, 100 Ark. 510, 140 S.W. 590 (1911).

 Here, we are concerned with the element of consideration. A contract cannot be implied by virtue of the fact that appellant's townhouses were connected to CVSI's line because this was a new charge. No service was being provided at the time of the June 1999 letter, and thus, consideration was required to support the new fees. Appellee's June 1999 letter contained the new rate structure. However, there is no evidence that appellant agreed to the new rate structure by paying the new fee. The only payments appellant made were as a result of suits being filed by CVSI.

Further, there is nothing in the record to indicate what benefit appellant would receive from agreeing to the new rate structure. There were a couple of allusions to the property being covered by a bill of assurance. However, the trial court noted that it was not put in evidence. If the bill of assurance contained provisions requiring payment of sewer fees to CVSI, then that could constitute the contractual basis, running with the land, for appellant's obligation to pay the fees. *See Kell v. Bella Vista Village Prop. Owners Ass'n*, 258 Ark. 757, 528 S.W.2d 651 (1975); *Moore v. Adams*, 200 Ark. 810, 141 S.W.2d 46 (1940). Here, there is an absence of any express contract or a bill of assurance with relevant provisions, and we further conclude that there was no implied contract because there was no evidence of consideration. Accordingly, the trial court erred in granting judgment to CVSI on a theory of an implied contract.

In appellant's second point, it argues that the trial court erred in granting a directed verdict on its counterclaim. In its counterclaim, appellant sought to enjoin future collection of the user maintenance fees. Because we have determined that there was no implied contract, this issue should not arise in the future. We therefore do not reach this issue.

Reversed and remanded.

ROBBINS and GRIFFEN, JJ., agree.