# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-1744

_____

Louis J. Peterson, D.C., on behalf of Patients E, I, K, L, N, P, Q and R, and on behalf of all others similarly situated

*Plaintiff - Appellee*

Lutz Surgical Partners, PLLC; New Life Chiropractic, PC

*Plaintiffs*

v.

UnitedHealth Group Inc.; United HealthCare Services, Inc.; United Healthcare Insurance Company; United Healthcare Service LLC

*Defendants - Appellants*

------------------------------

Riverview Health Institute, on its own behalf and on behalf of all others similarly situated

*Plaintiff - Appellee*

v.

UnitedHealth Group Inc.; United HealthCare Services, Inc.; United Healthcare Insurance Company; Optum, Inc.

*Defendants - Appellants*

------------------------------

Secretary of Labor

*Amicus on Behalf of Appellees*

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: May 15, 2018
Filed: January 15, 2019

_____

Before SHEPHERD, MELLOY, and GRASZ, Circuit Judges.

_____

GRASZ, Circuit Judge.

United[1] administers thousands of health insurance plans. In the course of processing millions of claims for benefits, United at times erroneously overpays service providers. United can generally recover these overpayments from "in-network" providers because it has agreements with those providers that allow it to "offset" the overpayment by withholding the overpaid amount from subsequent payments to that provider. In 2007, United implemented an aggregate payment and recovery procedure in which it began to offset overpayments made to "out-of-network" providers, even where the overpayment was made from one plan and the offset taken from a payment by a different plan, a practice known as cross-plan offsetting.

_____

[1]We refer to defendants UnitedHealth Group Inc., United HealthCare Services, Inc., United Healthcare Insurance Company, United Healthcare Service LLC, and Optum, Inc. collectively as "United."

The named plaintiffs in these consolidated class action cases are out-of-network medical providers who United intentionally failed to fully pay for services rendered to United plan beneficiaries in order to offset overpayments to the same providers from other United administered plans. The plaintiffs, litigating under the Employee Retirement Income Security Act ("ERISA") on behalf of their patients, the plan beneficiaries, claim the relevant plan documents do not authorize United to engage in cross-plan offsetting. The district court[2] agreed and entered partial summary judgment to the plaintiffs on the issue of liability. United appealed the summary judgment order. We affirm.

## I. Background

United describes itself as "the nation's leading health and well-being company." The United-administered health insurance plans at issue here are governed by ERISA as "employee welfare benefit plans." 29 U.S.C. § 1002(1). Many of these plans are self-insured, meaning the plan sponsor (often an employer) funds the plan while United administers it. United also administers fully-insured plans, which it both funds and administers.

In 2007, United instituted its new aggregate payment and recovery procedure that included cross-plan offsetting. Class actions were filed in 2014 by Dr. Louis J. Peterson and in 2015 by Riverview Health Institute, each challenging United's practice of cross-plan offsetting. Dr. Peterson sued as an authorized representative of his patients. Riverview sued pursuant to an assignment of rights in its patient agreement. United moved to dismiss Riverview's action, in part because many of the plans contained provisions prohibiting assignments. The district court denied the motion. The district court consolidated the two class actions for purposes of

[2]The Honorable Patrick J. Schiltz, United States District Judge for the District of Minnesota.

discovery and as to summary judgment on whether the governing documents of the United-administered plans authorized cross-plan offsetting.

United filed motions for summary judgment and Dr. Peterson and Riverview filed motions for partial summary judgment on the issue of liability. The district court denied United's motions and granted partial summary judgment to the plaintiffs. It rejected United's argument that Dr. Peterson lacked authority to sue as an authorized representative of his patients. On the merits, the court reviewed the underlying plan documents and concluded that, of those plans that did address offsetting, "all of those plans explicitly authorize same-plan offsetting; and not one of those plans explicitly authorizes cross-plan offsetting." Applying the factors set forth by this Court in *Finley v. Special Agents Mutual Benefit Association, Inc.*, 957 F.2d 617, 621 (8th Cir. 1992), the district court concluded that United's interpretation of the plan documents was not reasonable.

The district court certified its summary judgment order for immediate appeal under 28 U.S.C. § 1292(b) and this Court allowed United to appeal.

## II. Discussion

We will first address whether United's argument regarding the validity of Riverview's assignments from its patients is within the scope of our appellate jurisdiction in this interlocutory appeal under 28 U.S.C. § 1292(b) and whether Dr. Peterson is authorized to bring this action as a representative of his patients. We will then address the merits of the summary judgment order.

### a. Appellate Jurisdiction and Standing

United advances two arguments as to why it believes Riverview and Dr. Peterson are not authorized to bring these actions. It argues that Riverview lacks

standing to proceed as an assignee of its patients' claims because some of the relevant plan documents contain an enforceable anti-assignment provision. It also argues that Dr. Peterson lacks standing[3] because he did not sufficiently disclose a conflict of interest with his patients, thus nullifying the agreements granting him the authority to act as their "authorized representative." We conclude we lack appellate jurisdiction to review the district court's order regarding Riverview, but that Dr. Peterson does have standing.

### (i) Appellate Jurisdiction

The district court certified its summary judgment order for interlocutory appeal under 28 U.S.C. § 1292(b), which allows certification if "such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." Prior to the certified summary judgment order, the district court denied United's motion to dismiss Riverview's claim. This ruling was alluded to in the district court's summary judgment order when it noted in a footnote that "Riverview brings its action as the assignee of its patients' benefit claims." United asks this Court to review the district court's order regarding the validity of Riverview's assignment in this interlocutory appeal.

---

[3]While United's brief is unclear on this point, it appears it is asserting that Dr. Peterson and Riverview lack so-called "statutory standing," meaning they are not authorized by ERISA to bring these claims. *See generally Bank of Am. Corp. v. City of Miami*, 137 S. Ct. 1296, 1302–03 (2017) (discussing statutory and constitutional standing); *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125–28 (2014) (same). Having satisfied ourselves that Dr. Peterson and Riverview have standing under Article III of the U.S. Constitution, we will focus our review on statutory standing.

The Supreme Court has explained that in an appeal under § 1292(b), "appellate jurisdiction applies to the *order* certified to the court of appeals, and is not tied to the particular question formulated by the district court." *Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 205 (1996). Thus, "[t]he court of appeals may not reach beyond the certified order to address other orders made in the case." *Id.* (citing *United States v. Stanley*, 483 U.S. 669, 677 (1987)). "But the appellate court may address any issue fairly included within the certified order because 'it is the *order* that is appealable, and not the controlling question identified by the district court.'" *Id.* (quoting 9 J. Moore & B. Ward, *Moore's Federal Practice* ¶ 110.25[1], p. 300 (2d ed.1995)). Thus, the question we face is whether the issue of the validity of Riverview's assignments, decided in the district court's prior order, is "fairly included" in the summary judgment order.

An issue is "fairly included" in a certified order if it is "inextricably intertwined" with it. *See Murray v. Metro. Life Ins. Co.*, 583 F.3d 173, 176 (2d Cir. 2009) (stating that in an interlocutory appeal of an order certified under § 1292(b), the appellate court may review an issue decided in another order if it is inextricably intertwined with the certified order); 16 Wright & Miller, *Fed. Prac. & Proc.* § 3929 (3d ed. 2018) (stating that when reviewing a certified order under § 1292(b), "[t]he court of appeals will not consider matters that were ruled upon in other orders, unless a separate order is so inextricably intertwined that review of the certified order requires review of both together." (footnote omitted)); *cf. Langford v. Norris*, 614 F.3d 445, 458–59 (8th Cir. 2010) (discussing pendent appellate jurisdiction). An issue is inextricably intertwined with a certified order only when resolving the issue in the certified order necessarily resolves that issue and the issue is "coterminous with, or subsumed in, the [issue] before the court on interlocutory appeal." *Langford*, 614 F.3d at 458.

Here, it is not necessary to rule on the validity of Riverview's assignments in order to determine whether United is authorized under the plan documents to engage

-6-

in cross-plan offsetting — the issue in the certified summary judgment order. True, the issue of the validity of Riverview's assignments is in some sense antecedent to the cross-plan offsetting issue in that it could be dispositive of Riverview's claim. But the mere fact that a separate and discrete legal issue could be dispositive of a claim is not alone sufficient to render it "fairly included" in, or "inextricably intertwined" with, the order subject to interlocutory review. *See id.* at 458–59. Our review of the summary judgment order is not hampered by leaving this issue for appellate review after a final judgment.

### (ii) ERISA Standing

United argues that Dr. Peterson lacks standing because he cannot proceed as his patients' authorized representative. Specifically, it argues that he has not sufficiently disclosed a conflict of interest between himself and his patients. United argues that the alleged risk to Dr. Peterson's patients, the plan beneficiaries, is that a provider like Dr. Peterson would "balance bill" them, charging them for the amount United failed to pay as an offset for an overpayment. United argues that for Dr. Peterson to prevail, he must show that he has the right to balance bill his patients, thus creating a conflict between himself and his patients that he has not sufficiently disclosed.

ERISA authorizes civil actions to recover benefits due under a plan to be brought by plan participants and beneficiaries. *See* 29 U.S.C. § 1132(a)(1). Healthcare providers are generally not authorized under ERISA to sue on their own behalf, even if they are entitled to direct payment from the plan administrator by virtue of the plan's obligation to the patient and beneficiary, because the provider is not itself a plan participant or beneficiary. *See Grasso Enters., LLC v. Express Scripts, Inc.*, 809 F.3d 1033, 1040 (8th Cir. 2016).

For a healthcare provider to sue under 29 U.S.C. § 1132, it must do so by virtue of an assignment from, or as a representative of, a beneficiary. *See id.* at 1039–41. Where an agent or representative has a conflict of interest, the conflict must be fully disclosed to the principal. *See Wendt v. Fischer*, 154 N.E. 303, 304 (N.Y. 1926) (Cardozo, J.) ("If dual interests are to be served, the disclosure to be effective must lay bare the truth, without ambiguity or reservation, in all its stark significance.").[4]

United's argument fails for two reasons. First, it overstates the extent of any potential conflict of interest. Having United pay for the services provided by Dr. Peterson with money rather than with an offset would of course be in Dr. Peterson's interest and would also be in the patients' interest (if it turns out the offset was not a valid "payment" of their obligation to Dr. Peterson) or at least not be adverse to their interest (if it turns out the offset was valid payment). Thus, there is no meaningful conflict between Dr. Peterson and his patients. Second, Dr. Peterson's disclosure of the supposed conflict of interest was sufficient. The engagement letter signed by Dr. Peterson's patients fairly and adequately explained United's contention that there was a conflict of interest. We conclude that Dr. Peterson is authorized to bring this action as a representative of his patients.

---

[4]The parties disagree about whether the validity of Dr. Peterson's authorization to act as his patients' authorized representative is governed by New York agency law (because Dr. Peterson practices in New York) or by federal law under ERISA. Contrary to the appellees' argument, the issue is not directly governed by 29 C.F.R. § 2560.503–1(b), which provides that "claims procedures for a plan will be deemed to be reasonable only if . . . [t]he claims procedures do not preclude an authorized representative of a claimant from acting on behalf of such claimant in pursuing a benefit claim or appeal of an adverse benefit determination," but which does not govern whether and when a representative may represent a plan beneficiary in bringing a cause of action under 29 U.S.C. §1132. Because we see no substantive difference in the two sources of law that would be dispositive here, we assume without deciding that the question is governed by New York law.

## b. United's Plan Interpretation

At issue in this interlocutory appeal is the question of whether the plan documents allow United to engage in cross-plan offsetting. While there are many different plans at issue here, with varying plan language, each plan grants United broad authority to interpret and implement the plan. "Where an ERISA plan grants the administrator discretion . . . to interpret the plan's terms, courts must apply a deferential abuse-of-discretion standard of review." *Wengert v. Rajendran*, 886 F.3d 725, 727 (8th Cir. 2018) (quoting *Green v. Union Sec. Ins. Co.*, 646 F.3d 1042, 1050 (8th Cir. 2011)).

In reviewing administrators' plan interpretations, we consider the following factors:

> whether their interpretation is consistent with the goals of the Plan, whether their interpretation renders any language in the Plan meaningless or internally inconsistent, whether their interpretation conflicts with the substantive or procedural requirements of the ERISA statute, whether they have interpreted the words at issue consistently, and whether their interpretation is contrary to the clear language of the Plan.

*Finley*, 957 F.2d at 621. While these non-exhaustive factors "inform our analysis," the ultimate question remains whether the plan interpretation is reasonable. *King v. Hartford Life & Accident Ins. Co.*, 414 F.3d 994, 999 (8th Cir. 2005).

Two points are key to our analysis. First, nothing in the plan documents even comes close to authorizing cross-plan offsetting, the practice of not paying a benefit due under one plan in order to recover an amount believed to be owed to another plan because of that other plan's overpayment. We agree with the district court's summation that "not one of th[e] plans explicitly authorizes cross-plan offsetting."

-9-

To adopt United's argument that the plan language granting it broad authority to administer the plan is sufficient to authorize cross-plan offsetting would be akin to adopting a rule that anything not forbidden by the plan is permissible. Such an approach would undermine plan participants' and beneficiaries' ability to rely on plan documents to know what authority administrators do and do not have. It would also conflict with ERISA's requirement that "[e]very employee benefit plan shall be established and maintained pursuant to a written instrument." 29 U.S.C. § 1102(a)(1). United's assertion that it has the authority to engage in cross-plan offsetting can hardly be called an interpretation because it has virtually no basis in the text of the plan documents.[5]

Second, the practice of cross-plan offsetting is in some tension with the requirements of ERISA. While we need not decide here whether cross-plan offsetting necessarily violates ERISA, at the very least it approaches the line of what is permissible. If such a practice was authorized by the plan documents, we would expect much clearer language to that effect.

ERISA provides that plan assets are to be held in trust and that plan administrators are fiduciaries of the plan assets. 29 U.S.C. § 1002(21)(A) (stating that with limited exception, "a person is a fiduciary with respect to a plan to the extent . . . he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets."); see also 29 U.S.C. §§ 1102–1104; *Pegram v. Herdrich*, 530 U.S. 211, 222–26 (2000). ERISA's fiduciary duties "have the

---

[5]United relies on *Quality Infusion Care, Inc. v. Health Care Service Corp.*, 628 F.3d 725 (5th Cir. 2010), for the proposition that *cross-plan* offsetting is authorized by plan language that authorizes *intra-plan* offsetting. But *Quality Infusion* was not an ERISA case and we are not bound by its reasoning. *See Duluth, Winnipeg & Pac. Ry. Co. v. City of Orr*, 529 F.3d 794, 798 (8th Cir. 2008) (stating that sister circuit decisions are not binding on this Court).

familiar ring of their source in the common law of trusts." *Pegram*, 530 U.S. at 224. Specifically, with limited exception, a fiduciary must act in accordance with the plan documents, diversify investments, act prudently, and "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . *for the exclusive purpose of . . . providing benefits to participants and their beneficiaries*; and . . . defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1) (emphasis added).

While administrators like United may happen to be fiduciaries of multiple plans, nevertheless "each plan is a separate entity" and a fiduciary's duties run separately to each plan. *Standard Ins. Co. v. Saklad*, 127 F.3d 1179, 1181 (9th Cir. 1997). Cross-plan offsetting is in tension with this fiduciary duty because it arguably amounts to failing to pay a benefit owed to a beneficiary under one plan in order to recover money for the benefit of another plan. While this benefits the latter plan, it may not benefit the former. It also may constitute a transfer of money from one plan to another in violation of ERISA's "exclusive purpose" requirement. 29 U.S.C. § 1104(a)(1).[6]

Similarly to how we consider "whether [an] interpretation conflicts with the substantive or procedural requirements of the ERISA statute" in evaluating whether a plan interpretation is reasonable, *Finley*, 957 F.2d at 621, we view interpretations that authorize practices that push the boundaries of what ERISA permits with some skepticism. Regardless of whether cross-plan offsetting necessarily violates ERISA,

---

[6]We need not address the appellees' argument that United is conflicted because it may recover overpayments from fully-insured plans (losses United would otherwise bear) by withholding payments from self-insured plans. Nor do we need to address United's argument that any conflict of interest it may have is vitiated by virtue of the plan sponsors' approval of cross-plan offsetting by giving their "negative consent," i.e., by not opting out. United's interpretation is not reasonable, regardless of whether it is conflicted.

it is questionable at the very least.  Considering this, alongside the fact that there is no plan language — only broad, generic grants of administrative authority — that would authorize the practice, leads us to conclude that United's interpretation is not reasonable.

### III. Conclusion

Because United's interpretation of the plan documents is not reasonable, we affirm the district court's grant of partial summary judgment to the plaintiffs.

_____