# United States Court of Appeals
## For the Eighth Circuit

_____

No. 18-2264
_____

Air Evac EMS, Inc.

*Plaintiff - Appellant*

v.

USAble Mutual Insurance Company, doing business as Arkansas Blue Cross and
Blue Shield

*Defendant - Appellee*
_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock
_____

Submitted: January 16, 2019
Filed: July 23, 2019
_____

Before BENTON, MELLOY, and KELLY, Circuit Judges.
_____

MELLOY, Circuit Judge.

Air Evac EMS, Inc. ("Air Evac") asserts numerous claims against USAble
Mutual Insurance Company, d/b/a Arkansas Blue Cross and Blue Shield ("Arkansas
Blue"), regarding Arkansas Blue's allegedly inadequate reimbursement for air
ambulance services that Air Evac provided to Arkansas Blue plan members.  The

district court[1] dismissed all of Air Evac's claims for failure to state a claim under Fed. R. Civ. P. 12(b)(6). We affirm.

## I. Background

Emergency air transport is expensive. Air Evac's base rate for a single transport in 2014 was $19,250. With a per mile charge of between $115 and $205, Air Evac's average actual charge for air ambulance transportation in 2014 was over $30,000. Federal law requires Air Evac to provide its services without regard to a patient's ability to pay, which means Air Evac relies heavily on government and private insurers for reimbursement. But most government and private insurers provide only limited reimbursement for air ambulance services. For instance, Arkansas Blue, as a matter of policy, does not contract with air ambulance providers, and therefore has no in-network providers of air ambulance services. Moreover, Arkansas Blue's insurance plans typically limit reimbursement for air ambulance services to $5,000 per trip, though in some cases reimbursement is limited to $1,000 or less. Thus, when Air Evac provides air ambulance services to Arkansas Blue plan members, it is regularly compensated less than it charges. According to the Amended Complaint, Air Evac has two options for making up such shortfalls: balance-bill the remaining cost to the plan member or appeal to Arkansas Blue. (To effectuate appeals, Air Evac obtains assignments from patients of their right to appeal coverage decisions.) Neither option has proved very successful.

Air Evac argues that Arkansas Blue's limited reimbursement for air ambulance services violates a number of federal and state laws, including laws that prohibit annual limits on "essential health benefits," laws that mandate minimum payments for certain emergency services, and laws that require adequate provider networks. These laws do not provide a private cause of action, however, so Air Evac has chosen

---

[1]The Honorable Brian S. Miller, Chief Judge, United States District Court for the Eastern District of Arkansas.

to seek relief under the Employee Retirement Income Security Act of 1974 ("ERISA"), the Arkansas Deceptive Trade Practices Act ("ADTPA"), and contract law. We address each set of claims in turn.

## II. Discussion

### A. Standard of Review

We review a district court's grant of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) de novo, "accept[ing] the well-pled allegations in the complaint as true and draw[ing] all reasonable inferences in the plaintiff's favor." Meiners v. Wells Fargo & Co., 898 F.3d 820, 821 (8th Cir. 2018). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (citation omitted).

### B. ERISA

Under ERISA, Air Evac seeks equitable relief, namely an injunction and reformation of Arkansas Blue's insurance plan terms "so that they do not include limits on benefits for emergency air ambulance transportation." The district court concluded that Air Evac did not have the right to seek equitable relief under ERISA.

The primary remedy for challenging plan terms under ERISA is found in 29 U.S.C. § 1132(a)(1)(B). That section permits suit by a participant or beneficiary "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." Id. § 1132(a)(1)(B). In addition to allowing suit for recovery of benefits, ERISA allows suit for breach of fiduciary duty under § 1132(a)(2) and equitable relief under § 1132(a)(3). Section 1132(a)(3) provides for suit "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision

-3-

of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."

Thus, to have the right to seek equitable relief under ERISA, a party must either be a participant, beneficiary, or fiduciary, or the assignee of a participant, beneficiary, or fiduciary. Air Evac concedes that it is not a participant, beneficiary, or fiduciary. Air Evac argues, however, that it still has the right to sue Arkansas Blue for equitable relief under ERISA because Arkansas Blue plan members with ERISA-governed plans have assigned it that right. Accordingly, we must determine whether Air Evac's assignment actually conveys the right to sue for equitable relief.

The relevant language from the assignment[2] reads:

> [Patient] completely assigns to [Air Evac] <u>all</u> rights to (and related or associated with) any benefit claims and/or payments due from any third-party payor as reimbursement or payment for the Services, including but not limited to the rights to pursue administrative claims, request documents, receive payment and pursue litigation in order to obtain payment.

The district court concluded that the assignment "only convey[ed] patients' benefits and rights to bring related litigation in order to *obtain payment*" and that "[n]othing . . . appear[ed] to convey the right to sue for clarification or reformation of plan terms, which are extraordinary equitable remedies that extend far beyond litigation for payment on claims."

---

[2]Air Evac's assignment language has changed over the years. Before the district court, Air Evac cited six versions of its assignment. On appeal, Air Evac only cites three versions, all of which are essentially identical.

On appeal, Air Evac argues that ERISA assignments should be liberally construed and, accordingly, the language regarding rights "related or associated with . . . benefit claims" should be interpreted to include the right to pursue equitable remedies. Arkansas Blue counters that ERISA assignments should be construed narrowly and, accordingly, the assignment should be interpreted to convey only the right to sue for "payment of benefits." See Restatement (Second) of Contracts § 324 (Am. Law. Inst. 1981) ("It is essential to an assignment of a right that the obligee manifest an intention to transfer the right to another person without further action or manifestation of intention by the obligee."); see also Sanctuary Surgical Ctr., Inc. v. Aetna Inc., 546 F. App'x 846, 851 (11th Cir. 2013) (per curiam) ("Assignment agreements are generally interpreted narrowly. For that reason, the right to bring suit under 29 U.S.C. § 1132 cannot be assigned by 'implication or by operation of law.'" (citation omitted)).

More important than general statements as to liberal or narrow constructions, however, is the fact that our job is to interpret the express language of the assignment in the context in which it was made. When Arkansas Blue plan members assigned their rights to Air Evac, they did so in the context of facilitating payment for Air Evac's past provision of services. Thus, when Arkansas Blue plan members assigned "all rights to (and related or associated with) any benefit claims" to Air Evac, its seems clear, at a minimum, that they assigned Air Evac the right to recover benefits under § 1132(a)(1)(B). Given the context of the assignment, however, it does not automatically follow that such language also conveyed the right to sue for reformation of plan terms and other equitable relief under § 1132(a)(3). Indeed, the assignment does not specifically mention the right to sue for equitable relief; rather it limits the rights conveyed to those "related or associated with . . . *benefit claims* and/or *payments* due from any third-party payor." (Emphasis added). Moreover, the rights that are specifically mentioned—"the rights to pursue *administrative claims*, request documents, *receive payment* and pursue litigation in order to *obtain payment*" (emphasis added)—all suggest that Air Evac sought assignment of ERISA rights

-5-

related to obtaining payment, not equitable relief. Accordingly, we conclude that Air Evac's assignment does not convey the right to sue for equitable relief under § 1132(a)(3).

The limited case law supports our conclusion. For example, in Spinedex Physical Therapy USA Inc. v. United Healthcare of Arizona, Inc., the Ninth Circuit considered whether an assignment conveyed the right to sue for breach of fiduciary duty under § 1132(a)(2). 770 F.3d 1282, 1292 (9th Cir. 2014). According to the Ninth Circuit, the assignment "provided that the Plans would make payments directly to Spinedex for services rendered." Id. The assignment read that such payments would be considered

> payment toward the total charges for the professional services rendered. THIS IS A DIRECT ASSIGNMENT OF MY RIGHTS AND BENEFITS UNDER THIS POLICY. This payment, will not exceed my indebtedness to the above mentioned assignee, and I have agreed to pay, in a current manner, any balance of said professional service charges over and above this insurance payment.

Id. The plaintiff argued that the word "benefits" referred to the right to payment and that the word "rights" referred to "rights to bring claims for breach of fiduciary duty." Id. The Ninth Circuit disagreed, holding that the plaintiff's argument was "divorced from context" and that "[t]he entire focus of the Assignment [was] payment for medical services." Id. The Ninth Circuit also noted that "[t]he Assignment nowhere indicate[d] that . . . patients were assigning to [plaintiff] rights to bring claims for breach of fiduciary duty." Id. Similarly, in the present case, context suggests that the focus of the assignment is payment, and there is no indication that Arkansas Blue plan members were assigning their right to bring claims for equitable relief.

Air Evac points to several cases involving assignments that conveyed the right to sue for equitable relief under § 1132(a)(3). But in all of those cases, the breadth

of the assignments was not at issue and the courts' analyses were largely conclusory. Moreover, the assignments in those cases appear to have been broader than the assignment in this case. See Grasso Entrs., LLC v. Express Scripts, Inc., 809 F.3d 1033, 1037, 1041 (8th Cir. 2016) (finding assignment "authorizing the pharmacy 'to pursue *any and all remedies* to which [the beneficiaries] may be entitled, including the use of legal action in any court'" conveyed the right to sue under § 1132(a)(3)) (alteration in original) (emphasis added)); Podiatric OR of Midtown Manhattan, P.C. v. UnitedHealth Grp., Inc., No. 15-3234(DSD/HB), 2016 WL 126362, at *1, *3–4 (D. Minn. Jan. 11, 2016) (finding assignment of "*all of [beneficiary's] rights, claims, and other interests*—including the right to file an ERISA suit" conveyed the right to sue under § 1132(a)(3) (emphasis added)); Riverview Health Inst. v. UnitedHealth Grp. Inc., 153 F. Supp. 3d 1032, 1034, 1036 (D. Minn. 2015) (finding assignment of "*any causes of action* against the Health Insurer or Insurers arising from [the beneficiary's] contractual rights arising out of the procedure" conveyed the right to sue under § 1132(a)(3) (emphasis added)), aff'd on another ground, Peterson ex rel. E v. UnitedHealth Grp. Inc., 913 F.3d 769 (8th Cir. 2019), petition for cert. filed, (U.S. May, 30, 2019) (No. 18-1498). The assignment in this case is simply not as broad as the assignments in the cases cited by Air Evac.

## C. Arkansas Deceptive Trade Practices Act

The ADTPA makes it unlawful to, among other things, "[k]nowingly mak[e] a false representation as to the characteristics, ingredients, uses, benefits, alterations, source, sponsorship, approval, or certification of goods or services." Ark. Code Ann. § 4-88-107(a)(1). The ADTPA also makes it unlawful to "[e]ngag[e] in any other unconscionable, false, or deceptive act or practice in business, commerce, or trade." Id. § 4-88-107(a)(10). Air Evac alleges that Arkansas Blue violated the ADTPA in two ways. First, as an assignee of Arkansas Blue plan members with plans not governed by ERISA, Air Evac alleges that Arkansas Blue misled those plan members. Specifically, Air Evac argues that while Arkansas Blue did not provide any in-

network coverage of air ambulance services, its plans indicated "Emergency or Imperative Care Services" provided by an out-of-network provider would always be reimbursed as if they were provided by an in-network provider. According to Air Evac, Arkansas Blue's plans therefore led plan members to believe "they c[ould] avoid substantial out-of-pocket expense for emergency air ambulance transportation when it [was], in fact, . . . impossible for them to do so." Second, Air Evac alleges on its own behalf that Arkansas Blue engaged in the unconscionable practice of refusing to provide in-network coverage of air ambulance transportation. This practice, Air Evac argues, allowed Arkansas Blue to accept Air Evac's "valuable services," while paying only "a small fraction of the value of those services," thereby creating a windfall.

The district court concluded Arkansas Blue's conduct was not actionable because it fell within the ADTPA's safe harbor for "[a]ctions or transactions permitted under laws administered by the Insurance Commissioner." Ark. Code Ann. § 4-88-101(3) (2016) (amended 2017). In Arkansas, there are two approaches to applying statutory safe harbors: the specific-conduct rule and the general-activity rule. The specific-conduct rule "looks to whether state law permits or prohibits the conduct at issue," whereas the general-activity rule "looks to whether a state agency regulates the conduct." Air Evac EMS, Inc. v. USAble Mut. Ins. Co., 533 S.W.3d 572, 574 (Ark. 2017). Prior to determining that Arkansas Blue qualified for the ADTPA's safe harbor, the district court certified the following question to the Arkansas Supreme Court: "Should the ADTPA's safe-harbor provision be applied according to the specific-conduct rule or the general-activity rule?" Id. at 573 (citation omitted). The Arkansas Supreme Court adopted the specific-conduct rule, holding that the ADTPA's safe harbor protects only actions or transactions that "have been specifically permitted or authorized under laws administered by a state or federal regulatory body or officer." Id. at 575–76. In light of that ruling from the Arkansas Supreme Court, the district court determined that Arkansas Blue qualified for the ADTPA safe harbor because Air Evac's claims were based on the terms and rates of

-8-

Arkansas Blue's insurance plans, which pursuant to Arkansas law, are "filed with and approved by the Insurance Commissioner." Ark. Code Ann. § 23-79-109(a)(1)(A)(i).

On appeal, Air Evac does not suggest that the Insurance Commissioner failed to approve the terms and rates of Arkansas Blue's insurance plans. Rather, Air Evac argues that the safe harbor does not apply because its claims are based on Arkansas Blue's "unfair and unconscionable" actions, which "have never been approved by the Insurance Commissioner." We reject Air Evac's characterization of the basis for its ADTPA claims. The overall driving force behind Air Evac's claims is the allegation that Arkansas Blue inadequately reimbursed air ambulance services and misled its plan members about the nature of that reimbursement. But, the limits that Arkansas Blue imposes on reimbursement for air ambulance services are expressly stated in Arkansas Blue's insurance plans. Indeed, as Air Evac notes in its Amended Complaint, "[a] typical limit is $5,000, but some plans include limits of $1,000 or possibly less."[3] Consequently, Air Evac's ADTPA claims are, in fact, based on the terms and rates of Arkansas Blue's plans. Thus, for the reasons discussed by the district court, Air Evac's ADTPA claims are precluded by the ADTPA's safe harbor for "[a]ctions or transactions permitted under laws administered by the Insurance Commissioner."[4] Ark. Code Ann. § 4-88-101(3) (2016) (amended 2017).

---

[3]For example, Arkansas Blue's "Gold Plan" specifically states under "Benefits and Specific Limitations In Your Plan," that reimbursement for air ambulance services "may not exceed $5,000 per trip."

[4]Air Evac also argues that the Supreme Court's decision in Advocate Health Care Network v. Stapleton, 137 S. Ct. 1652 (2017) at least requires remand to determine whether its "ADPTA claims on behalf of church-affiliated hospital self-funded plans can proceed." According to Air Evac, such plans are now neither governed by ERISA, see Stapleton, 137 S. Ct. at 1656, nor subject to the Insurance Commissioner's approval, which means Air Evac's ADTPA claims on behalf of patients with such plans are not precluded by the ADTPA's safe harbor. We do not consider this argument, however, because Air Evac failed to alert the district court to the significance of Stapleton, which was decided well before the district court issued

D.  Contract Law

Air Evac seeks damages under contract law for breach of implied contract or, in the alternative, unjust enrichment.  The district court concluded that Air Evac did not plausibly allege either the existence of an implied contract or unjust enrichment.

i.  Implied Contract

Under Arkansas law, implied contracts are "inferred from the acts of the parties."  Steed v. Busby, 593 S.W.2d 34, 38 (Ark. 1980).  Thus, they can be "proven by circumstances showing the parties intended to contract or by circumstances showing the general course of dealing between the parties."  Id.  The elements of an implied contract, however, are the same as an express contract.  K.C. Props. of N.W. Ark., Inc. v. Lowell Inv. Partners, LLC, 280 S.W.3d 1, 13 (Ark. 2008).  "[T]here must be: (a) competent parties; (b) subject matter; (c) legal consideration; (d) mutual agreement; (e) mutual obligations."  Berry v. Cherokee Village Sewer, Inc., 155 S.W.3d 35, 38 (Ark. Ct. App. 2004).  The difference, therefore, between an express contract and an implied contract "is merely in the mode of manifesting assent and in the mode of proof."  K.C. Props., 280 S.W.3d at 13 (citation omitted).

Air Evac alleges that its general course of dealing with Arkansas Blue established an implied contract.  Specifically, Air Evac argues that: (1) it routinely provides air ambulance services to Arkansas Blue plan members; (2) Arkansas Blue "routinely receives and pays claims for [those services]"; and (3) "[a]t all relevant

its decision in 2018, and additional factual development would be required.  See United States v. Hirani, 824 F.3d 741, 751 (8th Cir. 2016) ("Ordinarily, we will not consider an argument raised for the first time on appeal. However, we may consider a newly raised argument 'if it is purely legal and requires no additional factual development, or if a manifest injustice would otherwise result.'" (citations omitted)).

times, Arkansas Blue was fully aware of the rates charged by Air Evac." Air Evac further alleges that the implied contract is for "payment in full" because "Arkansas Blue was fully aware that Air Evac expected to be paid its set rates when patients covered by Arkansas Blue's plans required emergency air ambulance transport."

Even assuming that an implied contract existed, Air Evac alleges no facts to support its assertion that such a contract was for payment in full. As Air Evac notes in its Amended Complaint, Arkansas Blue has consistently refused to contract with providers of air ambulance services, meaning it does not provide the favorable reimbursement associated with in-network coverage. Instead, Arkansas Blue's insurance plans expressly limit reimbursement for air ambulance services, typically to $5,000 per trip, though in some cases to $1,000 or less. Thus, Air Evac knew that it was an out-of-network provider and that reimbursement for its services would be limited accordingly. See Cmty. Hosp. of the Monterey Peninsula v. Aetna Life Ins. Co., 119 F. Supp. 3d 1042, 1049 (N.D. Cal. 2015) (finding "it would have been unreasonable for [a health care provider] to expect that [an insurer's] authorization constituted a promise to pay 100 percent of billed charges" in light of the "standard practice in the industry" and the fact that the provider knew it "would be paid at an out-of-network" level). Consequently, Air Evac's implied contract claim for payment in full is not plausible on its face because any implied contract between Air Evac and Arkansas Blue would only be for the amount paid in their course of dealings—the amount stated in Arkansas Blue's insurance plans.

ii. Unjust Enrichment

To find unjust enrichment, a party must have received something of value, to which he or she is not entitled and which he or she must restore. There must also be some operative act, intent, or situation to make the enrichment unjust and compensable. One who is free from fault cannot be held to be unjustly enriched merely because he or she has chosen to exercise a legal or contractual right. In short, an action based

-11-

on unjust enrichment is maintainable where a person has received money or its equivalent under such circumstances that, in equity and good conscience, he or she ought not to retain.

Campbell v. Asbury Auto., Inc., 381 S.W.3d 21, 36 (Ark. 2011) (citations omitted).

Air Evac alleges that Arkansas Blue has been unjustly enriched because it has "willingly accepted Air Evac's valuable services," yet "has paid Air Evac a small fraction of the value of those services." The unjust enrichment, according to Air Evac, is the "windfall" that Arkansas Blue received "[b]y wrongfully withholding payments to Air Evac . . . while at the same time retaining the amounts its members paid for air ambulance services (through premium payments)." Air Evac alleges unjust enrichment in the alternative to breach of implied contract because "[t]here can be no 'unjust enrichment' in contract cases." Campbell, 381 S.W.3d at 36 (citation omitted).

Arkansas Blue was not unjustly enriched because it was acting in accordance with its "contractual right[s]." Id. In return for their premium payments, Arkansas Blue provided its plan members with health insurance, including the expressly limited reimbursement for air ambulance services. Thus, as long as Arkansas Blue provided that limited reimbursement (and Air Evac does not allege otherwise), the premium payments Arkansas Blue received in exchange did not constitute money that it "ought not to retain." Id.; cf. 32nd Street Surgery Ctr., LLC v. Right Choice Managed Care, 820 F.3d 950, 957 (8th Cir. 2016) (rejecting a health care provider's claim of unjust enrichment against health insurance companies because the insurers' policies "'clearly intend[ed] to govern' the amounts the insurers were obligated to pay on behalf of their insureds"). Consequently, Air Evac fails to state a claim of unjust enrichment.

## IV. Conclusion

For the foregoing reasons, we affirm the judgment of the district court.

_____